UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DOUBLE AA INTERNATIONAL INVESTMENT GROUP, INC., and DAYMI RODRIGUEZ,<br><br>Plaintiffs,<br><br>v.<br><br>SWIRE PACIFIC HOLDINGS, INC., and LAWYERS TITLE INSURANCE CORPORATION,<br><br>Defendants. | CASE NO.: 08-23444-ALTONAGA/BROWN |

**SWIRE PACIFIC HOLDINGS, INC.'S RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Swire Pacific Holdings, Inc. files this Response to Plaintiffs' Motion for Summary Judgment.

Daymi Rodriguez and her husband Jose Rodriguez, on behalf of Double AA, executed a contract for the construction and sale of an apartment in the Asia Condominium in Miami, Florida. Ms. Rodriguez failed to close the transaction. She and Double AA sued to get their deposit back, and they have asked the Court for summary judgment.

Double AA and Ms. Rodriguez do not claim any funds are missing. In fact, the parties agree that an independent escrow agent has always maintained (and still maintains) the escrowed deposit funds in an appropriate federally insured bank.

Instead, Double AA and Ms Rodriguez claim the escrow agent should have created two independent escrow accounts: one for the first 10% of the deposit, and a second for the remaining 10% which the parties agreed Swire could apply towards construction costs.

According to Double AA and Ms. Rodriguez, maintaining the entire deposit in a single escrow account violated Fla. Stat. § 718.202.

On this basis, Double AA and Ms. Rodriguez brought a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III) and claim that Swire breached the contract (Count IV).

These claims fail. First, there has been no violation of Fla. Stat. § 718.202. At all times, an independent escrow agent has maintained the deposit funds in a federally insured bank and has kept an accurate record of the amount of funds and interest in escrow. Other than a construction draw (which the contract and Florida law specifically allowed Swire to take) the entire deposit and all accrued interest remain accounted for and in a federally insured bank to this day. In this way, Swire and Lawyers Title have acted in compliance with the plain words of Fla. Stat. § 718.202.

Second, because all of the relevant funds are present and accounted for in an appropriate escrow account, Double AA and Ms. Rodriguez have no conceivable damages under FDUTPA (which only allows actual damages) or under a breach of contract theory (which allows a plaintiff to recover losses due to a breach). Third, Double AA and Ms. Rodriguez have not rebutted Swire's affirmative defenses.

The Court should deny the motion for summary judgment.

**I. Background**

A.    Counterstatement of Material Facts.

For the Counterstatement of Material Facts in Response to Plaintiffs' Motion for Summary Judgment, *see* D.E. 100.

B.  The Undisputed Facts.

1.  In September 2004, Mr. and Mrs. Rodriguez executed a fully refundable reservation agreement for apartment 3202 at the Asia Condominium. In conjunction with this reservation agreement, Mr. and Ms. Rodriguez placed a $50,000 deposit with Lawyers Title Insurance Company. *See* Reservation Agreement, attached as Exhibit 1. On or about February 2, 2005, Double AA (through Mr. and Ms. Rodriguez) executed a contract for the construction and sale of apartment 3202 at Asia. *See* Complaint [D.E. 47] at ¶ 7. Double AA agreed to pay $1,160,000.00 for the apartment, and paid a deposit of $232,000.00. *See id.* at ¶¶ 12, 13.

2.  The contract set out how the deposit funds would be held and disbursed:

> Except as permitted below or by the provisions of the Florida Condominium Act, all of Buyer's deposits will be held in escrow by LAWYERS TITLE INSURANCE CORPORATION ("Escrow Agent"), with offices at 200 South Biscayne Boulevard, Suite 2660, Miami, FL 33131, in accordance with the escrow agreement contained in the Condominium Documents. The escrow agreement is incorporated into this Agreement as if repeated at length here, and Buyer agrees that the deposits may be held in any depository which meets the requirements of the Act, including, without limitation, a financial institution chartered and located out of the State of Florida.
>
> Buyer agrees that all of Buyer's deposits in excess of ten percent (10%) of the Purchase Price may be used by Seller for construction and development purposes as permitted by law. In addition to the foregoing, if Seller has obtained or obtains the approval of the Director of the Division of Florida Land Sales, Condominiums and Mobile Homes to provide "Alternative Assurances", as permitted by law, in lieu of holding deposits up to ten percent (10%) of the Purchase Price in escrow, Seller may cause the Escrow Agent to disburse such deposits to it for all uses permitted by law. If Seller has obtained such approval as of the date of this Agreement, a copy of the Escrow Agreement providing the mechanism for such disbursement has been delivered to Buyer. Likewise, if such approval is obtained after the date of this Agreement, Buyer will be provided with a copy of the Escrow Agreement, but Buyer agrees that it shall not be deemed a material or adverse change in the offering of the Condominium by reason of the fact that Buyer has already agreed to the use of Buyer's deposits up to ten percent (10%) of the Purchase Price in the manner stated above.

Contract at § 4.

3.  On the first page of the contract and immediately above Mr. and Ms. Rodriguez's

3

signature at the end of the contract, the contract indicated in capital letters that Swire might use deposits in excess of the purchase price to pay for construction costs. The contract reads:

> ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

*Id*. at 1 (emphasis in original).

4. The parties also agreed how they would deal with defaults and what remedies would be available:

> If Seller fails to perform any of Seller's obligations under this Agreement, Seller will be in "default." If Seller is still in default ten (10) days after Buyer sends Seller notice thereof (or such longer time as may reasonably be necessary to cure the default if same cannot be reasonably cured within ten (10) days). Buyer will have such rights as may be available in equity and/or under applicable law, provided however, that absent an intentional or willful default by Seller under this Agreement, Buyer shall not be permitted to seek specific performance of Seller's obligations under this Agreement.
>
> The provisions of this Section 13 will survive (continue to be effective after) closing.

*Id.* at § 13.

5. After being engaged as escrow agent, Lawyers Title opened a "Contract Account" (or "Special Account") for the Asia project at Wachovia Bank. The bank called this account: "Swire Pacific Holdings, INC/Asia, Lawyers Title Ins Corp as Escrow Agent." Later, Lawyers Title transferred all of the Asia deposit money to HSBC. In conjunction with the "Contract Account," Lawyers Title created sub-accounts to keep track of the individual deposits. Lawyers Title maintained the records of these sub-accounts on a spread sheet which indicated for each buyer, the total deposits held (plus interest), individual deposits by date of deposit, and individual withdrawals by date of withdrawal. *See* Deposition of Damaris Rodriguez, at 33-32; Exhibits 3 and 5 to the deposition.

6. Swire sent all of the funds for the Double AA deposit to Lawyers Title, and Lawyers Title deposited all of the Double AA funds into the Contract Account. *See* Affidavit of Damaris Rodriguez, Exhibit E to Complaint [D.E. 47], at ¶ 3; Depo. of Damaris Rodriguez, at 36-39; Exhibits A, C, and D to the Complaint (receipts for deposits from Lawyers Title to Double AA). On April 16, 2006, in accord with the contract and Florida law, Lawyers Title released all funds in excess of 10% of the purchase price to Swire for construction purposes. *Id.* at ¶ 9. The remaining 10% of the deposit plus accrued interest sits in the Contract Account, and will do so until this dispute is resolved. *Id.* at ¶ 10.

7. On August 21, 2008, Double AA assigned the contract to Daymi Rodriguez. Through this agreement, Ms. Rodriguez accepted all of Double AA's rights and obligations under the contract. Double AA continued to be liable under the contract until Ms. Rodriguez closed. *See* Assignment and Assumption Agreement, D.E. 89-2, at ¶ ¶ 1, 2, and 4.

8. Ms. Rodriguez and Mr. Rodriguez, on behalf of Double AA, have testified that they want their deposit back because they could not transfer the apartment, not because of any particular damages done to them by Swire. Ms. Rodriguez testified:

> Q. How have you been harmed by Swire?
> A. What type of harm?
> Q. Any harm.
> …
> A. Harmed because I could not live in the apartment I wanted to live in.
> Q. Anything else?
> A. No, nothing else.
> Q. Why couldn't you live in the apartment that you wanted to live in?
> A. Well, because they couldn't get the financing because then it took -- and it was delayed more so than the time they said that it would be ready by and then, you know, when I went to get financing, nobody was found who could provide it.

Deposition of D. Rodriguez, at 10:18-11:7.

9. Mr. Rodriguez, as the corporate representative for Double AA, testified:

> Q. How have you been damaged by Swire?
> …
> A. Exactly what happened was that I wasn't able to sell the apartment because she [Marta Hermida] told me that I couldn't sell it and that is the way that I have been harmed.
> Q. Is there any other way that you have been harmed?
> …
> A. Perhaps.
> Q. Okay. Tell me, please.
> A. Perhaps, I don't know.
> Q. So do you know or do you not know?
> …
> A. No.
> Q. Can you read me back that last question?
> …
> Q. So, no, you do not know?
> A. You mean in what other way Swire could have harmed me?
> Q. That's right.
> A. No, I don't know.

Deposition of J. Rodriguez, at 79:3-80:8.

## II. Argument

A. <u>Summary Judgment</u>.

Federal Rule of Civil Procedure 56(c) directs Courts to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

The party seeking summary judgment has the burden to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at a trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (internal citations omitted). In determining whether a party has met his burden, the court views the evidence and the resulting factual inferences in the light most favorable to the opposing party. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal citations omitted). If there is a conflict between the

parties' allegations or evidence, the Court must accept opposing party's evidence as true and must draw all reasonable inferences in favor of the opposing party. *See, e.g., Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003). "The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

Moreover, a party seeking summary judgment must disprove all affirmative defenses to his claim. *See Gray v. Union Planters Nat. Bank*, 654 So. 2d 1288, 1289 (Fla. 3d DCA 1995). As a result, where a party has "not provided the Court with sufficient evidence to disprove the remaining affirmative defenses… [the party's] request that the Court grant summary judgment" should be denied. *See Pac. Employers Ins. Co. v. Wausau Bus. Ins. Co.*, 508 F. Supp. 2d 1167, 1180 (M.D. Fla. 2007). *See also Haven Fed. Sav. & Loan Ass'n v. Kirian*, 579 So. 2d 730, 733 (Fla. 1991) ("a court cannot grant summary judgment where a defendant asserts legally sufficient affirmative defenses that have not been rebutted.").

   B. <u>Double AA's and Ms. Rodriguez's FDUTPA Claim Fails</u>.

Double AA and Ms. Rodriguez claim Swire violated FDUTPA by failing to establish a special escrow account as required by Fla. Stat. §718.202(2). This claim fails as a matter of law. The undisputed evidence reveals Swire and Lawyers Title complied with Fla. Stat. §718.202(2) and established a special escrow account for the deposits. In addition, Double AA and Ms. Rodriguez suffered no actual damages -- the only damages that FDUTPA allows.

To state a claim under FDUTPA, an individual must allege: 1. a deceptive or unfair practice; 2. causation; and 3. actual damages. *See Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006) (A "claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."), *rev. den.*, 962 So.2d 335 (Fla.

7

2007). In short, a "consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act." *Macias v. HBC of Fla., Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997), *reh'g den.*; *Gen. Motors Acceptance Corp. v. Laesser*, 718 So.2d 276, 277 (Fla. 4th DCA 1998) ("to be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer"), *reh'g den*.

When a plaintiff brings a FDUTPA claim and bases it on a statutory violation that fails as a matter of law, the court must dismiss the FDUTPA claim. *See Zlotnick v. Premier Sales Group, Inc.*, 480 F. 3d 1281, 1285-87 (11th Cir. 2007) (affirming dismissal of plaintiff's FDUTPA claim because plaintiff had failed to state a claim under Fla. Stat. § 718.502(2)(c), which was the basis of the FDUTPA claim).

1. <u>Swire and Lawyers Title Complied with Fla. Stat. § 718.202.</u>

According to Double AA and Ms. Rodriguez, when a developer takes a deposit in excess of 10% of a condominium's sale price, Fla. Stat. §718.202 requires the developer to establish two separate escrow accounts -- one for the deposits up to 10% of the sale price, and another for the deposits in excess of 10% of the sale price.

This theory has no support in the Statute's plain language, and because this underlying statutory claim fails, the FDUTPA claim fails in turn.

The relevant portion of Florida Statute § 718.202 directs:

> (1) If a developer contracts to sell a condominium parcel and the construction, furnishing, and landscaping of the property submitted or proposed to be submitted to condominium ownership has not been substantially completed in accordance with the plans and specifications and representations made by the developer in the disclosures required by this chapter, the developer shall pay into an escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price. The escrow agent shall give to the purchaser a receipt for the deposit, upon request. In lieu of the foregoing, the

>division director has the discretion to accept other assurances, including, but not limited to, a surety bond or an irrevocable letter of credit in an amount equal to the escrow requirements of this section. Default determinations and refund of deposits shall be governed by the escrow release provision of this subsection. …
>
>…
>
>(2) All payments which are in excess of the 10 percent of the sale price described in subsection (1) and which have been received prior to completion of construction by the developer from the buyer on a contract for purchase of a condominium parcel shall be held in a special escrow account established as provided in subsection (1) and controlled by an escrow agent and may not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer….

No portion of the statute requires a developer to maintain more than one escrow account. In fact, the opposite is true.

As indicated above, subsection 1 requires a developer to "pay into *an* escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price." (emphasis added). This portion of the statute clearly indicates a single account.

In subsection 2, the statute indicates that a developer must place all payments in excess of the original 10% "in a special escrow account established as provided in subsection 1." The statute does not say a "different" escrow account, or "other" escrow account. In short, the second portion of the law refers back to the original, single account. In this way, the statute requires one account for all deposits.

Subsection 1 provides another reason why Double AA and Ms. Rodriguez are incorrect. As indicated above, "the division director has the discretion to accept other assurances, including, but not limited to, a surety bond or an irrevocable letter of credit in an amount equal to the [law's] escrow requirements… ." Under this passage and the relevant portion of the Florida Administrative Code, a developer may avoid creating an escrow account entirely by placing a single surety bond or single letter of credit against all of the deposits for a project. *See* Fla.

9

Admin. Code 61B-17.009 ("The amount of any assurance plus the amount of any sales deposits in escrow must at all times equal or exceed the amount of sales deposits required to be assured by Section 718.202, Florida Statutes. It is the developer's duty to ensure that the assurances are adequate.").

This arrangement is completely at odds with the notion that the law requires multiple escrow accounts for the same deposit. After all, when the developer provides this form of security, the developer provides a single instrument to cover all escrow funds -- not multiple instruments (for each deposit or portions of the deposits).

In the end, the Florida escrow law exists for a single purpose: to make sure that an independent third party holds the deposit funds in a safe place or that there is legitimate security in place to ensure that the funds are available when needed. *See First Sarasota Service Corp. v. Miller*, 450 So.2d 875 (Fla. 2d DCA 1984) ("The obvious purpose of section 718.202 is to protect purchasers under pre-construction condominium contracts from loss of their deposits should the developer fail to perform its contractual obligations."). For this reason, subsection 8 requires a developer to engage an independent escrow agent to maintain all deposit funds in a bank or other suitable institution (including law offices, title companies, and real estate brokerages). Subsection 8 also requires that deposit funds can only be placed with a federally insured institution, invested in securities of the United States, or secured with an appropriate instrument.

The undisputed facts reveal that Lawyers Title met these demands.

Consistent with the statute and general practice, Lawyers Title opened an escrow account for the Asia project at Wachovia Bank. The bank called this account: "Swire Pacific Holdings, INC/Asia, Lawyers Title Ins Corp as Escrow Agent." Later, Lawyers Title transferred the

money to HSBC. Banks would not act otherwise because doing so would create endless numbers of extra accounts. *See* Depo. of Damaris Rodriguez, at 26-31, 32-33, and Exhibit 3 to the deposition.

In conjunction with this general "Contract Account," Lawyers Title created sub-accounts to keep track of each buyer's deposit. Lawyers Title maintained the records of these sub-accounts on a spreadsheet which indicated for each buyer: the total deposits held (plus interest), the specific portions of deposits provided by date of deposit (i.e., reservation deposit, first deposit, second deposit), and withdrawals by date of withdrawal. *See* Depo. of Damaris Rodriguez, at 35-39, and Exhibit 5 to the deposition.

As a result, Lawyers Title maintained all of the information that the law required. The spreadsheet clearly indicates the amount and date of receipt for each buyer's reservation deposit, first deposit, and second deposit. The spread sheet further indicates the exact amount withdrawn from each account for construction purposes. *See* Depo. of Damaris Rodriguez, at 35-38, and Exhibit 5 to the deposition

In light of these uncontested facts, Double AA and Ms. Rodriguez are essentially upset that Lawyers Title did not put a separate line on its internal spreadsheet -- even though the money was fully accounted for and all funds were held in a single account at a federally insured bank. There is no statutory support for this claim.

According to Double AA and Ms. Rodriguez, §718.202(8) supports their theory. They claim the legislature's use of the word "every" signifies that it meant to require two escrow accounts. There is no legal or textual support for this interpretation. This section says:

> **Every** escrow account required by this section shall be established with a bank; a savings and loan association; an attorney who is a member of The Florida Bar; a real estate broker registered under chapter 475; a title insurer authorized to do business in this state, acting through either its employees or a title insurance agent

11

> licensed under chapter 626; or any financial lending institution having a net worth in excess of $5 million. The escrow agent shall not be located outside the state unless, pursuant to the escrow agreement, the escrow agent submits to the jurisdiction of the division and the courts of this state for any cause of action arising from the escrow. **Every** escrow agent shall be independent of the developer, and no developer or any officer, director, affiliate, subsidiary, or employee of a developer may serve as escrow agent. Escrow funds may be invested only in securities of the United States or an agency thereof or in accounts in institutions the deposits of which are insured by an agency of the United States.

Fla Stat. § 718.202(8) (emphasis added).

The term "Every" at the beginning of the statute simply refers to the fact that there are numerous escrow accounts for many projects across the state. This interpretation is clear because this section of the law provides directions for every existing escrow account.

The second appearance of the term "every" in the same section makes the point clearer. If you apply Double AA's and Ms. Rodriguez's logic and conclude that "Every escrow account" means developers must split single deposits into different and independent escrow accounts, then "Every escrow agent" would have to mean that a developer would also have to provide different and independent escrow agents for the two independent accounts. This approach makes no sense.

The cases that Double AA and Ms. Rodriguez identify to support their position have nothing to do with this situation. In *First Sarasota Service Corp. v. Miller*, 450 So.2d 875 (Fla. 2d DCA 1984), a series of condominium buyers had deposits in escrow. When they failed to close their transactions, they notified the escrow agent that the deposits were subject to a dispute. Despite this notification, the escrow agent determined the buyers were in default and released the deposits to the seller. The trial court granted summary judgment to the buyers and the Court of Appeals reversed.

The court explained that the escrow agent had the right to release the funds to the

developer if the buyers were in default, but violated the statute if they were not in default. The court noted that the trial court had not ruled on this crucial issue before entering summary judgment. *See Id*. at 878.

By contrast, in this case, all escrowed deposits funds are with Lawyers Title, and Lawyers Title has made no determination regarding who is correct in this lawsuit. As Damaris Rodriguez (escrow manager for Lawyers Title) indicated in her affidavit: "Lawyers Title will continue to hold the remaining balance deposited with it until closing or until it is properly directed as to how to disburse those funds." *See* Aff. of Damaris Rodriguez, at 3.

*Barrack v. State of Florida*, 462 So.2d 1196 (Fla. 4th DCA 1985), is similarly inapplicable on the facts. The State charged Barrack with violating the escrow statute by using money that should have been in an escrow account prior to the closing of the relevant transaction. The Court of Appeals held the charging document was insufficient because it failed to charge an actual crime.

In the end, the undisputed facts reveal Lawyers Title established a special escrow account for Double AA's and Ms. Rodriguez's deposit in accord with Fla. Stat. §718.202. Except for a withdrawal for construction costs (that was fully consistent with the statute and the contract), all of the deposit funds plus interest remain in the account. For these reasons, there is no evidence that Swire or Lawyers Title violated Florida's escrow statute, and there is no evidence that Swire or Lawyers Title violated FDUTPA. The Court should deny Double AA's and Ms. Rodriguez's motion for summary judgment on this claim.

    2.    <u>There Are No Actual Damages</u>.

Double AA's and Ms. Rodriguez's motion for summary judgment has another fatal problem. Neither party suffered actual damages -- the only damages FDUTPA allows. *See*

*Rollins*, 951 So.2d at 869-73 (finding that FDUTPA does not provide for recovery of nominal damages or speculative losses; only actual damages may be recovered).[1]

In this case, there are only two possible ways to calculate actual damages. First, there would be missing deposit funds (and all unapplied deposit funds are present and accounted for). Second, there could be a difference in the value of the apartment Swire promised from the apartment Swire was ready to deliver. *McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1347 (M.D. Fla. 2007), explains this point in a FDUTPA case involving real estate:

> the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.

*Id*. at 1355.

The undisputed evidence reveals that Double AA and Ms. Rodriguez suffered no damages related to handling of the deposit funds. Ms. Rodriguez testified:

> Q. How have you been harmed by Swire?
> A. What type of harm?
> Q. Any harm.
> …
> A. Harmed because I could not live in the apartment I wanted to live in.
> Q. Anything else?
> A. No, nothing else.
> Q. Why couldn't you live in the apartment that you wanted to live in?
> A. Well, because they couldn't get the financing because then it took -- and it was delayed more so than the time they said that it would be ready by and then, you know, when I went to get financing, nobody was found who could provide it.

Depo of D. Rodriguez, at 10:18-11:7.

Double AA (through its corporate representative Mr. Rodriguez) testified:

---

[1] In their motion for summary judgment, Double AA and Ms. Rodriguez ask the Court to void the contract under Fla. Stat. §718.202, but they did not bring a claim under this statute. Rather, the plaintiffs filed actions under theories that only provide for money damages (FDUTPA and contract). In this way, the plaintiffs are essentially asking the Court to allow them to amend their pleadings in their motion for summary judgment. This type of amendment is contrary to the Rules of Civil Procedure and it is fundamentally unfair at this late stage in the case (especially since the plaintiffs filed an amended complaint already and discovery is closed).

CASE NO.: 08-23444-ALTONAGA/BROWN

> Q. How have you been damaged by Swire?
> …
> A. Exactly what happened was that I wasn't able to sell the apartment because she [Marta Hermida] told me that I couldn't sell it and that is the way that I have been harmed.
> Q. Is there any other way that you have been harmed?
> …
> A. Perhaps.
> Q. Okay. Tell me, please.
> A. Perhaps, I don't know.
> Q. So do you know or do you not know?
> …
> A. No.
> Q. Can you read me back that last question?
> …
> Q. So, no, you do not know?
> A. You mean in what other way Swire could have harmed me?
> Q. That's right.
> A. No, I don't know.

Depo. of J. Rodriguez, at 79:3-80:8.

Even if this testimony did not exist, there is no reasonable interpretation of the evidence that reveals damage to Double AA or Ms. Rodriguez because of the way in which Lawyers Title handled the deposits. First, if the Court were to decide that Double AA or Ms. Rodriguez were entitled to a return of the deposit funds (and for the reasons in this brief, that would be the wrong result), there are no missing escrowed deposits. Second, Ms. Rodriguez has the contractual right to purchase the apartment she promised to buy at the agreed price. She has never claimed Swire promised to sell her an apartment worth more than the one it built.

Without actual damages, Double AA and Ms. Rodriguez are unable to prove all of the elements of a FDUTPA claim. Summary judgment is inappropriate on this ground.

    C.    <u>Double AA's and Ms. Rodriguez's Breach of Contract Claim Fails.</u>

Double AA and Ms. Rodriguez claim Swire breached the contract by "failing to establish a 'special escrow account' as Fla. Stat. § 718.202(2) requires." Complaint at ¶ 102.

In order to succeed on a breach of contract claim, a plaintiff must prove: (1) a contract existed; (2) a breach of the contract; and (3) damages resulting from the breach of contract. *See Sulkin v. All Florida Pain Management*, 932 So. 2d 485,  486 (Fla. 4th D.C.A. 2006).

The undisputed facts reveal that Double AA and Swire entered into a contract which dealt with the escrow funds in Section 4.  The relevant portion of  Section 4 of the contract directs:

> Except as permitted below or by the provisions of the Florida Condominium Act, all of Buyer's deposits will be held in escrow by LAWYERS TITLE INSURANCE CORPORATION ("Escrow Agent"), with offices at 200 South Biscayne Boulevard, Suite 2660, Miami, FL 33131, in accordance with the escrow agreement contained in the Condominium Documents.  The escrow agreement is incorporated into this Agreement as if repeated at length here, and Buyer agrees that the deposits may be held in any depository which meets the requirements of the Act, including, without limitation, a financial institution chartered and located out of the State of Florida.
>
> Buyer agrees that all of Buyer's deposits in excess of ten percent (10%) of the Purchase Price may be used by Seller for construction and development purposes as permitted by law.  In addition to the foregoing, if Seller has obtained or obtains the approval of the Director of the Division of Florida Land Sales, Condominiums and Mobile Homes to provide "Alternative Assurances", as permitted by law, in lieu of holding deposits up to ten percent (10%) of the Purchase Price in escrow, Seller may cause the Escrow Agent to disburse such deposits to it for all uses permitted by law.  If Seller has obtained such approval as of the date of this Agreement, a copy of the Escrow Agreement providing the mechanism for such disbursement has been delivered to Buyer.  Likewise, if such approval is obtained after the date of this Agreement, Buyer will be provided with a copy of the Escrow Agreement, but Buyer agrees that it shall not be deemed a material or adverse change in the offering of the Condominium by reason of the fact that Buyer has already agreed to the use of Buyer's deposits up to ten percent (10%) of the Purchase Price in the manner stated above.

Contract at § 4.

The undisputed facts further reveal that Swire complied with all of the terms in Section 4.

Swire sent all of the deposits associated with apartment 3202 to Lawyers Title. *See* Depo. of Damaris Rodriguez, at 36-39; Exhibits A, C, and D to the Complaint (receipts for deposits from Lawyers Title to Double AA).  After receiving the funds, Lawyers Title created a Special Account for the Double AA deposit. *See* Aff. of D. Rodriguez, at ¶ 3. Lawyers Title continued to

receive deposit funds until it held the total deposit (equaling 20% of the purchase price). Later, consistent with contract and Florida law, Swire directed Lawyers Title to release all deposit funds in excess of 10% of the purchase price so that Swire could use this money for construction purposes. *Id.* at ¶ 9. On April 19, 2006, Lawyers Title released all funds in excess of 10% of the purchase price to Swire for construction purposes. *Id.*

As indicated above, Swire and Lawyers Title complied with Fla. Stat. § 718.202.

Further, even if the Court were to somehow conclude that Swire breached this agreement, there are no damages. The undisputed facts reveal that all of the deposits and the accumulated interest (except for construction funds properly released to Swire) remain in an escrow account under Lawyers Title's supervision. There is no money lost or misallocated.

Moreover, the contract required Double AA and Ms. Rodriguez to provide notice of a breach and to allow 10 days for Swire to cure the defect. The parties agreed:

> If Seller is still in default ten (10) days after Buyer sends Seller notice thereof (or such longer time as may reasonably be necessary to cure the default if same cannot be reasonably cured within ten (10) days).

Contract at § 13.

There is no evidence that Double AA or Ms. Rodriguez provided this notice and opportunity to cure. As a result, the contract bars their claim.

Without a breach or damages, the breach of contract claim cannot succeed as a matter of law. The Court should deny Double AA's and Ms. Rodriguez's motion for summary judgment on this count.

D.  <u>There are Unrebutted Defenses</u>.

In addition, Double AA and Ms. Rodriguez have completely ignored Swire's defenses of obligations performed, material breach, discharge, estoppel, laches, waiver, ratification, and

17

good faith.  Because these defenses remain viable and unrebutted, it would be inappropriate for the Court to enter summary judgment.  *See Pac. Employers Ins. Co.*, 508 F. Supp. 2d at 1180; *Haven Fed. Sav. & Loan Ass'n*, 579 So. 2d at 733.  Moreover, each of the following affirmative defenses concern issues of fact, making their determination on summary judgment improper.

### III. Conclusion

For all of the foregoing reasons, the Court should deny Double AA's and Ms. Rodriguez's Motion for Summary Judgment.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Counsel for Defendant Swire Pacific Holdings, Inc.*
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

BY:    /s/ Sandra Millor
       STEPHEN JAMES BINHAK
         Florida Bar No.  0736491
         binhaks@gtlaw.com
       SANDRA J. MILLOR
         Florida Bar No.  0013742
         millors@gtlaw.com

CASE NO.: 08-23444-ALTONAGA/BROWN

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2009, I electronically filed the foregoing Defendant Swire Pacific Holdings, Inc.'s Response in Opposition to Plaintiffs' Motion for Summary Judgment with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/ Sandra Millor
    SANDRA J. MILLOR

**Service List**

**Alexander Lian, Esq.**
ALEXANDER LIAN, P.A.
777 Brickell Avenue, Suite 1210
Miami, Florida 33131

**Philip J. Kantor, Esq.**
**Asika Patel, Esq.**
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
One East Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33301