## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-23444-CIV-ALTONAGA/Brown

**DOUBLE AA INTERNATIONAL INVESTMENT GROUP, INC.**; and **DAYMI RODRIGUEZ**,

      Plaintiffs,

vs.

**SWIRE PACIFIC HOLDINGS, INC.**, a Delaware corporation; and **LAWYERS TITLE INSURANCE CORPORATION**,

      Defendants.

_____/

### ORDER

**THIS CAUSE** came before the Court upon Cross Motions for Summary Judgment filed by Plaintiffs, Double AA International Investment Group, Inc. ("Double AA"), and Daymi Rodriguez ("Rodriguez") (collectively, "Plaintiffs") [D.E. 93]; and by Defendant, Swire Pacific Holdings, Inc. ("Swire") [D.E. 89]. The Court has carefully reviewed the parties' written submissions, pertinent portions of the record, and applicable law.

### I. BACKGROUND[1]

This case arises from a condominium sale. "Asia" is a condominium development located on Brickell Key, in Miami, Florida, consisting of 123 apartments. (*See* Swire's Motion for Summary Judgment ("*Swire's Mot.*") [D.E. 89] at 2). Pursuant to the Interstate Land Sales Full Disclosure Act (the "ILSFDA"), 15 U.S.C. § 1701 *et seq*., developers are required to provide certain disclosures to potential buyers, unless the development falls within certain exemptions. (*See id*.). Swire, the

_____

[1] Unless otherwise noted, the facts are undisputed.

Case No. 08-23444-CIV-ALTONAGA/Brown

developer of the project, agreed to substantially complete 24 of the units within two years. (*See id.*). Under the ILSFDA, those units were exempt from the disclosure requirements. (*See id.*). The remaining 99 units were exempt under the ILSFDA's 99 unit exemption. (*See id.*).

In September 2004, Double AA, through Daymi and Jose Rodriguez, entered into a reservation agreement with Swire for Unit 3202 in the Asia complex. (*See id.*). Swire did not make disclosures under the ILSFDA to the Plaintiffs. (*See* Plaintiffs' Amended Complaint ("*Am. Compl.*") [D.E. 47] at ¶¶ 29-35). As part of the Agreement, Double AA placed a $50,000 deposit with Defendant, Lawyers Title Insurance Company ("Lawyers Title"). (*See Swire's Mot.* at 2). On February 2, 2005, Double AA and Swire executed a contract ("Purchase and Sale Agreement") for the construction and sale of Unit 3202. (*See id.*). Double AA agreed to pay $1,160,000.00 for the condominium unit, and paid a deposit of $232,000.00, which was 20% of the total purchase price. (*See id.*; Plaintiffs' Motion for Summary Judgment ("*Plaintiffs' Mot.*") [D.E. 93] at 2). Swire sent the $232,000.00 to Lawyers Title, and Lawyers Title opened a "Contract Account" for the Double AA deposit. (*See Swire's Mot.* at 5; *Plaintiffs' Mot.* at 2). On April 16, 2006, Lawyers Title released all funds in excess of 10% of the purchase price to Swire for construction expenses. (*See Swire's Mot.* at 5).

In the fall of 2007, a potential buyer expressed interest in purchasing the unit from Double AA for the price of $1,160,000.00. (*See Am. Compl.* at ¶ 37). Swire's agent told Double AA's principal that Double AA could not sell the unit unless the price was no less than $1,500,000.00. (*See id.*). On August 21, 2008, Double AA assigned the Purchase and Sale Agreement to Rodriguez. (*See Swire's Mot.* at 5). Rodriguez accepted Double AA's rights and obligations under the Purchase

2

Case No. 08-23444-CIV-ALTONAGA/Brown

and Sale Agreement.  (*See id*. at 6).  Double AA retained liability under the contract until Rodriguez

closed on the condominium.  (*See id*.).

Ultimately, the deal failed to close, and Swire retained the $232,000.00 deposit.  (*See Am.*

*Compl.* at ¶¶ 43, 46).  After this lawsuit was filed, on February 24, 2009, and again on May 7, 2009,

Double AA and Rodriguez, through counsel, gave notice to Swire that Plaintiffs were exercising

their right to void the Purchase and Sale Agreement, and demanded the return of the $232,000.00

deposit.  (*See Plaintiffs' Mot*. at 3).

Plaintiffs filed suit against Swire and Lawyers Title in a five-count Complaint: (1) Count I

seeks a declaratory judgment against Swire as to the disposition of the $116,000.00 held in escrow

by Lawyers Title on the grounds that the Purchase and Sale Agreement is invalid based on lack of

mutuality of remedies, and because a liquidated damages clause in the contract is a penalty; (2)

Count II seeks a declaratory judgment against Swire and Lawyers Title as to the disposition of the

$116,000.00 held in escrow, as well as the additional $116,000.00 deposited by Plaintiffs, on the

grounds that Defendants violated Florida Statute Section 718.202; (3) Count III alleges violations

of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla Stat. §§ 501.201-.213,

against Swire; (4) Count IV alleges breach of contract against Swire; and (5) Count V alleges a

breach of the covenant of good faith and fair dealing against Swire.  Plaintiffs and Swire now move

for summary judgment.

## II.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

Case No. 08-23444-CIV-ALTONAGA/Brown

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

## III.  ANALYSIS

### A.      Plaintiffs' Motion for Summary Judgment

Plaintiffs state they seek summary judgment on the following issues:

(a) Defendant Swire Pacific Holdings, Inc. ("Swire") failed to comply with Fla. Stat. § 718.202 (1)-(2); (b) Plaintiffs properly voided the Purchase Agreement under § 718.202 (5); and (c) Plaintiffs are entitled to a refund of their deposit plus interest as provided in § 718.202 (5).

Plaintiffs also seek summary judgment that, as a matter of law, Defendant Swire breached the Purchase Agreement when it failed to establish escrow accounts as required under § 718.202.

(*Plaintiffs' Mot.* at 1).

Plaintiffs argue that the Purchase and Sale Agreement is voidable because Swire failed to comply with Florida Statute Section 718.202.  Section 718.202 governs sales or reservation deposits for condominiums, and provides, in relevant part:

(1)  If a developer contracts to sell a condominium parcel and the construction, furnishing, and landscaping of the property submitted or proposed to be submitted to condominium ownership has not been substantially completed in accordance with the plans and specifications and representations made by the developer in the disclosures required by this chapter, the developer shall pay into an escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price. The escrow agent shall give to the purchaser a receipt for the deposit, upon request. In lieu of the foregoing, the division director has the discretion to accept other assurances, including, but not limited to, a surety bond or an irrevocable letter of credit in an amount equal to the escrow requirements of this section. Default determinations and refund of deposits shall be governed by the escrow release provision of this subsection. Funds shall be released from escrow as follows:

4

Case No. 08-23444-CIV-ALTONAGA/Brown

* * *

(2) All payments which are in excess of the 10 percent of the sale price described in subsection (1) and which have been received prior to completion of construction by the developer from the buyer on a contract for purchase of a condominium parcel shall be held in a special escrow account established as provided in subsection (1) and controlled by an escrow agent and may not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer. If the money remains in this special account for more than 3 months and earns interest, the interest shall be paid as provided in subsection (1).

(3) If the contract for sale of the condominium unit so provides, the developer may withdraw escrow funds in excess of 10 percent of the purchase price from the special account required by subsection (2) when the construction of improvements has begun. He or she may use the funds in the actual construction and development of the condominium property in which the unit to be sold is located. . . .

* * *

(5) The failure to comply with the provisions of this section renders the contract voidable by the buyer, and, if voided, all sums deposited or advanced under the contract shall be refunded with interest at the highest rate then being paid on savings accounts, excluding certificates of deposit, by savings and loan associations in the area in which the condominium property is located.

Plaintiffs maintain that pursuant to section 718.202, Swire was required to establish two separate escrow accounts for the $232,000.00 deposit, which was 20 percent of the purchase price. According to Plaintiffs, Swire was required to set up one escrow account to hold the funds representing the first 10 percent of the purchase price, and the second "special" escrow account to hold any deposit above 10 percent of the purchase price. Swire's failure to establish the two discrete accounts, Plaintiffs contend, renders the contact voidable by Plaintiffs.

Swire disagrees. Swire argues that Plaintiffs' theory "has no support in the Statute's plain language." (Swire's Response to Plaintiffs' Motion for Summary Judgment ("*Swire's Resp.*") [D.E. 101] at 8). Citing subsections (1) and (2) of the statute, Swire claims that "[n]o part of the statute

5

Case No. 08-23444-CIV-ALTONAGA/Brown

requires a developer to maintain more than one escrow account." (*Id*.). Swire reasons as follows:

> As indicated above, subsection 1 requires a developer to "pay into *an* escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sales price." (emphasis added). This portion of the statute clearly indicates a single account.
>
> In subsection 2, the statute indicates that a developer must place all payments in excess of the original 10% "in a special escrow account established as provided in subsection 1." The statute does not say a "different" escrow account, or "other" escrow account. In short, the second portion of the law refers back to the original, single account. In this way, the statute requires one account for all deposits.

(*Id*. at 9).

This is a case of first impression. There are no reported decisions by Florida state or federal courts as to whether a failure to establish two separate escrow accounts when deposits are above 10 percent of the purchase price violates section 718.202 so as to render the contract voidable. The Eleventh Circuit has explained that "[t]he primary principle of statutory construction requires courts to give effect to the plain meaning of the words used 'in their ordinary and usual sense.'" *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194-1195 (11th Cir. 2008) (quoting *Caminetti v. United States*, 242 U.S. 470, 485-86 (1917)). The court further explained that, "[t]o the extent possible, the rules of statutory construction require courts to give meaning to every word and clause in a statute." *Id*. at 1195 (citations omitted). Finally, the court noted that "courts must reject statutory interpretations that would render portions of a statute surplusage." *Id*. (citation omitted).

In giving effect to the plain meaning of the words, it is apparent that the statute requires the establishment of two separate escrow accounts. Subsection (1) states that all payments up to 10 percent of the purchase price are to paid "into an escrow account" by the developer. Subsection (2)

6

Case No. 08-23444-CIV-ALTONAGA/Brown

states that all payments in excess of 10 percent of the purchase price are to be "held in a special escrow account established as provided in subsection (1) . . . ."  The use of the modifier "special" in subsection (2) differentiates the account referenced in subsection (2) from the escrow account described in subsection (1), notwithstanding that the "special" account is to be established as provided in subsection (1).  That language referring back to subsection (1) does not mean it is the same escrow account, merely that the second, "special" escrow account is to be established in the same manner as the escrow account described in subsection (1).  Had the two accounts been referring to the same account, rather than discrete accounts, the legislature could have simply stated that payments in excess of the 10 percent are to be held "in the escrow account already established in subsection (1)."

Moreover, subsection (3) of the statute states that if the contract so provides, a developer may withdraw funds in excess of 10 percent of the purchase price "from the special account required by subsection (2)."  Again, if the statute required only one escrow account, the language in subsection (3) would be meaningless.  The language and various sections of the statute clearly contemplate two separate escrow accounts: one for payments of up to 10 percent of the purchase price, and a second, separate account for any payments beyond 10 percent of the purchase price.  The separate accounts make particular sense when one considers that the funds in excess of 10 percent may be withdrawn from the special escrow account for use in construction costs, while the funds covering the first 10 percent of the purchase price may not be withdrawn prior to closing.

If the statute required only one escrow account to hold all payments made by a purchaser, there would be no need for separate subsections of the statute addressing the establishment of an

Case No. 08-23444-CIV-ALTONAGA/Brown

escrow account for payments up to 10 percent, and a "special" escrow account for payments over 10 percent.  If the only issue was the disbursement of funds, the statute could have very easily been written to state that, from the escrow account, the developer could withdraw funds in excess of 10 percent for construction costs.  The statute, as written, however, calls for separate accounts for the separate levels of deposits.

No courts have squarely addressed the issue of whether a failure to establish two separate escrow accounts for deposits over 10 percent of the purchase price renders the contract voidable.  However, one court has construed section 718.202 as requiring two separate escrow accounts.  In *In re Viking I, Inc.*, the bankruptcy court determined that because the debtor did not establish escrow accounts, but kept funds in a general operating account, the funds were part of the bankruptcy estate.  95 B.R. 225 (Bankr. M.D. Fla. 1989).  Although the holding in that case is not relevant here, in its decision the court stated that

> [t]he Statute [section 718.202] requires the developer to establish one escrow account controlled by an escrow agent for down payments of up to 10% of the sale price received by the developer from the time-share purchaser *and* one escrow account likewise controlled by an escrow agent for payments in excess of 10% of the sale price received by the developer from the purchaser prior to closing.

*Id.* at 226-227 (emphasis added).  Similarly, while addressing a tangentially related matter, Florida's Fourth District Court of Appeal discussed the statute's requirement for specific escrow accounts in the plural:

> It might have been simpler and more to the point for the legislature to merely restrict use by a developer of any such purchase funds, as opposed to specifying the type of escrow accounts that should be utilized; however, we can understand that the enacting body foresaw payment into the specified escrow accounts as a key to all else that is required by the section. We are mindful that the subject law places no specific controls over the escrow agent or agency receiving the funds, however, we do not

8

Case No. 08-23444-CIV-ALTONAGA/Brown

perceive this as a defect.

*Barrack v. State*, 462 So. 2d 1196, 1197 (Fla. 4th DCA 1985).

Considering the plain language of the statute, giving meaning to each word as written, and avoiding an interpretation that would render portions of the statute surplusage, the only reasonable conclusion is that the statute requires a developer to establish two separate escrow accounts if a buyer deposits more than 10 percent of the purchase price. Given that requirement, and given the express language of section 718.202(5), Swire's failure to establish two separate escrow accounts for Plaintiffs' deposit violated the statute, and rendered the Purchase and Sale Agreement voidable by the Plaintiffs.

Under a voidable contract, plaintiffs are entitled to seek rescission of their contract, repudiating the transaction and disgorging any benefits they received under the contract. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1278 (11th Cir. 2004) (citing *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000)). Here, Plaintiffs gave notice to Swire that they were exercising their right to void the contract under section 718.202 on February 24, 2009 and again on May 7, 2009, and demanded the return of their deposit, plus interest, under the statute. Swire's refusal to return the funds is in direct contravention of the statute. No facts being in dispute, Plaintiffs are entitled to summary judgment on Count II as a matter of law.

As to the breach of contract claim in Count IV, Plaintiffs state "[t]he Purchase Agreement and the Escrow Agreement (*see* **Exhibits A and E**) both provide that the parties will comply with § 718.202. The developer did not comply and thus breached the Purchase Agreement." (*Plaintiffs' Mot.* at 12) (emphasis in original). To succeed in a claim for breach of contract under Florida law,

9

Case No. 08-23444-CIV-ALTONAGA/Brown

a plaintiff must plead and prove: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

In this case, the Purchase and Sale Agreement nowhere provides that the parties will comply with section 718.202. The Agreement references other sections of the Florida Statutes, but never specifically mentions section 718.202. (*See* Purchase and Sale Agreement ("*Agreement*") [D.E. 93] at 25).[2] The Escrow Agreement does mention section 718.202; however, the Escrow Agreement does not specifically state that Swire "shall" comply with section 718.202. (*See* Escrow Agreement ("*Escrow*") [D.E. 93] at 44). The Escrow Agreement merely states that "Developer desires to make arrangements to escrow deposits on each Contract in accordance herewith and with the provisions of Section 718.202, Florida Statutes." (*Id*.). Moreover, the Escrow Agreement is not part of the Purchase and Sale Agreement, and Plaintiffs are not a party to the Escrow Agreement, which was entered into between Swire and Lawyers Title.

The Purchase and Sale Agreement expressly states: "This Agreement is the entire contract for sale and purchase of the Unit and once it is signed, it can be amended only by a written instrument signed by both Buyer and Seller which specifically states that it is amending this Agreement." (*Agreement* at ¶ 39). The Escrow Agreement is not signed by Plaintiffs, and the Escrow Agreement does not specifically state that it amends the Purchase and Sale Agreement; therefore, a failure to comply with the terms of the Escrow Agreement does not constitute a breach of the Purchase and Sale Agreement. Because compliance with section 718.202 is not a material

---

[2] Docket Entry 93 contains Plaintiffs' Motion along with several exhibits. For ease of reference page numbers are referred to by the entire docket entry pagination.

Case No. 08-23444-CIV-ALTONAGA/Brown

term of the contract between Plaintiffs and Swire, Plaintiffs have not shown that Swire breached the contract by a failing to comply with those statutory provisions. Accordingly, Plaintiffs' motion for summary judgment as to the breach of contract claim is denied.[3]

Nonetheless, as noted, Swire violated section 718.202 by failing to establish two separate escrow accounts. Accordingly, the Court grants summary judgment to Plaintiffs as to Count II, a declaratory judgment that Swire violated section 718.202, and Plaintiffs are therefore entitled to a refund of their deposit funds from Swire and Lawyers Title, plus interest, under Fla. Stat. § 718.202(5).[4]

### B. Swire's Motion for Summary Judgment

Swire makes numerous arguments in its Motion for Summary Judgment. It argues: (1) as to Count I, the contract is valid, because mutuality of remedies exists, and the liquidated damages clause is not a penalty; (2) regarding Count III, Swire did not violate the FDUTPA; (3) on Count IV,

---

[3] Swire raises various arguments as to why it did not breach the contract. First, it argues that because it did not violate section 718.202, it did not breach the contract. Because Swire did in fact violate section 718.202, that argument fails. Swire also argues that even if there was a breach, Plaintiffs suffered no damages because the escrow account still holds their $116,000.00 deposit. The additional $116,000.00 which was disbursed to Swire, however, is no longer held in the escrow account and constitutes actual damages to the Plaintiffs. Accordingly, this argument also fails. Finally, Swire argues that even if it breached, Plaintiffs were required to provide notice of any breach to Swire and allow 10 days to cure the breach. Plaintiffs sent notice to Swire in February and May of 2009, explaining that Swire had violated section 718.202. Assuming that a violation of section 718.202 constitutes a breach of the contract, Swire's notice argument fails. These arguments, however, are irrelevant, as the express language of the Purchase and Sale Agreement does not transform a violation of section 718.202 into a breach of the Agreement.

[4] Plaintiffs seek summary judgment on the issue of whether Swire violated Fla. Stat. § 718.202, and whether they are entitled to a return of their deposit funds. Although in the Motion Plaintiffs do not specifically reference Count II, it is that count of the Amended Complaint that seeks a declaratory judgment that Swire and Lawyers Title violated section 718.202, and that Plaintiffs are entitled to a refund of their deposits. Accordingly, summary judgment is appropriately granted as to Count II.

Case No. 08-23444-CIV-ALTONAGA/Brown

Swire did not breach the contract; and (4) regarding Count V, Swire did not breach the implied covenant of good faith and fair dealing. The issue of whether Swire breached the contract by failing to adhere to the provisions of section 718.202 has already been addressed, and that analysis is not repeated here.[5] The Court will therefore address only the remaining three issues: whether the Purchase and Sale Agreement is invalid because of the lack of mutuality of remedies and liquidated damages clause (Count I), whether Swire violated the FDUTPA (Count III), and whether Swire breached the covenant of good faith and fair dealing (Count V).

1.     Count I: Declaratory Judgment

In Count I, Plaintiffs seek a declaratory judgment that the Purchase and Sale Agreement is invalid for lack of mutuality of remedies and because the liquidated damages clause is an unenforceable penalty. Specifically, in Count I, Plaintiffs seek a declaration that Swire has no right or interest to the $116,000.00 held in escrow, Lawyers Title must release the funds in escrow and pay accumulated interest to Rodriguez, Plaintiffs are entitled to the additional $116,000.00 tendered in deposit plus accumulated interest, and Plaintiffs are entitled to attorney's fees. Swire seeks a summary judgment that the Purchase and Sale Agreement is enforceable.

Because the Agreement is voidable based on non-compliance with Florida Statute Section 718.202, the question of whether the contract is invalid based on the allegations in Count I may be moot. *See Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*, No. 1:04CV00820,

---

[5] In their Amended Complaint, Plaintiffs also allege Swire breached the Purchase and Sale Agreement by prohibiting Plaintiffs from selling the condominium to another buyer. However, Swire argues that the limitation on transfer and assignment was not a breach of the contract, as Swire was simply adhering to the express terms of the contract. Plaintiffs did not respond to Swire's argument on this issue and thus appear to concede the point.

Case No. 08-23444-CIV-ALTONAGA/Brown

1:04CV01079, 2006 WL 3848697, at *8, n.8 (M.D.N.C. Dec. 29, 2006) ("The Court notes that

Liner's claim for a declaratory judgment that the Agreements are invalid is moot in light of the

Court's decision to grant Nakell's Motion for Summary Judgment on his breach of contract claim.").

In any event, regarding Count I, Swire's Motion was predicated on its understanding that Plaintiffs

"ask the Court to declare their contract unenforceable because it fails to provide mutual remedies and

because the liquidated damages provision acts as a penalty." (*Swire's Mot.* at 7). In their opposition,

Plaintiffs take issue with Swire's characterization of Count I, calling it a "blatant

mischaracterization." (*Plaintiffs' Resp. in Opp.* [D.E. 105] at 5). "Count I does not request this

Court to declare the Purchase Agreement unenforceable. The request is more nuanced. . . . Plaintiffs

request that this Court construe the [Purchase] Agreement and declare Paragraph [sic] 13, 26, and

37 void for lack of mutuality of remedies. . . . [and] declare the liquidated damages clause in

Paragraph 13 void and unenforceable[.]" (*Id.*).

Regardless of how the parties differ in their understanding of what it is that Plaintiffs seek

in Count I, a triable issue of fact is raised in the papers, precluding the grant of summary judgment

to Swire. In Florida, "[l]iquidated damages arising from breach of contract are appropriate when (1)

damages from the breach are not readily ascertainable, and (2) the sum stipulated is not grossly

disproportionate to the damages reasonably expected to follow from the breach." *Resnick v. Uccello

Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) (citing *MCA Television Ltd. v. Public

Interest Corp.*, 171 F. 3d 1265, 1271 (11th Cir. 1999); *Hyman v. Cohen*, 73 So. 2d 393, 401 (Fla.

1954) (en banc)). If liquidated damages serve only to punish the breaching party, they are

inappropriate. *Id.* (citing *Lefemine v. Baron*, 573 So. 2d 326, 328-29 (Fla. 1991)). Plaintiffs cite to

Case No. 08-23444-CIV-ALTONAGA/Brown

the deposition testimony of Stephen Owens, Swire's vice-president, as evidence that when the parties executed the Purchase and Sale Agreement, Swire could easily have ascertained potential damages. Swire cites to the same testimony to support its position that at the time the parties contracted, it was impossible to ascertain damages as there were too many unknown factors to determine what the damages for a breach might be.

Consequently, summary judgment is denied as to Count I.

2.  Count III: Violation of the FDUTPA

In order to succeed in a claim under the FDUTPA, a plaintiff must prove: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Plaintiffs allege Swire violated the FDUTPA in several ways: (a) by violating the provisions of the ILSFDA, 15 U.S.C. §§ 1701 *et seq*.; (b) by not allowing Plaintiffs to transfer the condominium unit to another buyer; and (c) by violating Fla. Stat. § 718.202. Swire argues it did not violate the FDUTPA in any fashion.

a.  *Violation of the ILSFDA*

Plaintiffs claim Swire violated the ILSFDA, and that, in itself, violates the FDUTPA. The ILSFDA is "'an antifraud statute utilizing disclosure as its primary tool' with the principal purpose of 'protect[ing] purchasers from unscrupulous sales of undeveloped home sites.'" *Kamel v. Kenco/The Oaks at Boca Raton LP*, 321 F. App'x 807, 809 (11th Cir. 2008) (quoting *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447 (11th Cir. 1985)). The ILSFDA requires a seller to provide a property report to the buyer prior to the execution of a contract. *Id.* (citing 15 U.S.C. § 1703(a)(1)(B)). If the seller fails to provide the property report, the buyer may revoke the

14

Case No. 08-23444-CIV-ALTONAGA/Brown

contract for up to two years following execution. *Id.* (citing 15 U.S.C. § 1703(c)).

The ILSFDA provides exemptions from disclosure requirements for certain types of properties. One of these exemptions, known as the "two-year exemption," exempts properties upon which a contract obliges the seller to erect a building within two years. *See* 15 U.S.C. § 1702(a)(2). Another relevant exemption is the "99 unit exemption," which exempts subdivisions containing fewer than 100 units which are not exempt under subsection (a). *See* 15 U.S.C. § 1702(b)(1). These two exemptions are permitted to be used in conjunction with one another.

The Department of Housing and Urban Development has provided guidelines explaining that "[t]he 100 lot count for purposes of the exemption excludes lots that are exempt from jurisdiction under 24 CFR 1710.5 (b) through (h) [the ILSFDA's two-year exemption]." HUD website, available at http://portal.hud.gov/portal/page/portal/FHA_Home/consumers/interstate_land_sales/ils_exemp2. The Code of Federal Regulations also makes clear that "stacking" the two exemptions is permissible:

> The sale of lots in a subdivision is exempt from the registration requirements of the Act if, since April 28, 1969, the subdivision has contained fewer than 100 lots, exclusive of lots which are exempt from jurisdiction under § 1710.5. In the sale of lots in the subdivision that are not exempt under § 1710.5, the developer must comply with the Act's anti-fraud provisions, set forth in §§ 1710.4 (b) and (c).

24 C.F.R. § 1710.6.

In this case, the development contained a total of 123 units. Swire contracted to complete 24 of those units within two years, thereby exempting those units from the disclosure provisions. The remaining non-exempt units number 99, thereby falling within the 99 unit exemption. Because the unit purchased by Plaintiffs in this case was one of the 99, Swire had no obligation to provide a property report or make other disclosures under the ILSFDA. Under the plain language of the

15

Case No. 08-23444-CIV-ALTONAGA/Brown

statute, "the provisions requiring registration and disclosure . . . shall not apply to – (1) the sale or lease of lots in a subdivision containing fewer than 100 lots which are not exempt under subsection (a)."  15 U.S.C. § 1702(b).

Plaintiffs assert that the exemptions do not apply in this case because of another provision of the ILSFDA.  The ILSFDA specifically states that the exemptions will apply "[u]nless the method of disposition is adopted for the purposes of evasion of this chapter."  15 U.S.C. §§ 1702(a) and (b).  According to Plaintiffs, Swire structured the exemptions of the various units specifically to avoid the ILSFDA's disclosure requirements.  In support of this position, Plaintiffs rely on *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239 (S.D. Fla. 2009).

In *Gentry*, the court found the developer was entitled to no exemptions under the ILSFDA because its purpose was to evade the ILSFDA's disclosure and anti-fraud requirements.  The developer in *Gentry*, as the developer here, drafted two sets of purchase agreements.  *Id*. at 1246.  The subdivision consisted of 126 condominium units: the agreements for 36 of those units promised a completion date within two years, bringing those units within the exemption of section 1702(a); the remaining 90 units fell within the exemption created by section 1702(b), and those purchase agreements did not contain a two-year completion provision.  *Id*.

The court noted there was very little case law, and a lack of binding precedent, interpreting the language "unless the method of disposition is adopted for the purposes of evasion under this chapter."  *Id*. at 1247.  The court noted the Eighth Circuit had determined a developer would only be found to have deliberately evaded the provisions of the ILSFDA if, along with structuring the sales to fall within ILSFDA exemptions, the developer had engaged in fraudulent conduct.  *Id*.

16

Case No. 08-23444-CIV-ALTONAGA/Brown

(citing *Atteberry v. Maumelle Co.*, 60 F.3d 415, 421 (8th Cir. 1995)).  The court rejected the Eighth Circuit's interpretation as being inconsistent with the remedial purposes of the ILSFDA and inconsistent with the congressional intent of the statute:

> The difficulty with this interpretation is that when drafting § 1702, Congress gave no indication that evasion should be construed as tantamount to fraud, nor are the two terms typically used synonymously.  Nor do the Guidelines give any indication that there must be fraud to trigger the evasion provision.
>
> Moreover, the ILSFDA is a remedial statute intended to protect consumers  from unscrupulous sales practices and requires ambiguities concerning exemptions to be construed narrowly.  *Kamel*, ___ Fed. Appx. at ____, 2008 WL 4601715, at *2.  A requirement that fraud must accompany evasion expands the scope of all exemptions in § 1702 because it substantially narrows the definition of evasion, thereby reducing the applicability of a principle that limits the scope of all ILSFDA exemptions.  Therefore, a requirement that fraud must accompany evasion distorts the language of the statute and is in tension with its fundamental purpose.

*Id*. at 1247-48.  The court went on to note, however, that "[i]t is nevertheless clear that Congress intended certain land sales to be exempt from the ILSFDA's requirements."  *Id*. at 1248.  The court determined that a reasonable approach would be to determine whether the developer had any legitimate business purpose in structuring the development to fall within ILSFDA exemptions, or whether the only conceivable purpose for the structuring was to avoid the ILSFDA's disclosure and anti-fraud requirements.  *Id*.

The court noted that the parties had fully briefed the issue and were aware of the lack of precedent and guiding interpretation of the "intent to evade" language.  *Id*. at 1250.   The parties were required to present evidence to assist the court in coming to a determination of the developer's intent, but the developer had failed to set forth any legitimate business reason for structuring the development so as to fall within two separate ILSFDA exemptions.  *Id*.  The court explained, "the

17

Case No. 08-23444-CIV-ALTONAGA/Brown

threshold for establishing a legitimate business purpose sufficient to qualify for an exemption may be low, but it requires some factual evidence demonstrating that the method of disposition has some bona fide, real world objective that manifests a legitimate business purpose." *Id*. at 1248. Given the lack of evidence of any legitimate business purpose, the court found the developer's only reason for the structure of the sales was to avoid the requirements of the ILSFDA. *Id*. at 1250-51.

Plaintiffs assert that the facts of this case are comparable to *Gentry*, and clearly, there are some similarities. Swire, like the developer in *Gentry*, created two sets of purchase agreements. The first set applied to 24 units, which were required to be completed within two years. The remainder of the agreements did not contain the two-year completion provision, but those units were exempted from disclosure requirements under the 99-unit exemption. According to Plaintiffs, Swire has not articulated any legitimate business purpose for the two different sets of purchase agreements, and so Plaintiffs urge the Court to find, as did the court in *Gentry*, that the only conceivable purpose was to avoid the ILSFDA's disclosure provisions.

Swire, however, states that it had a legitimate business purpose in drafting the two different sets of agreements and causing the development to fall into two exemptions under the ILSFDA. Swire explains that by being exempt from the ILSFDA's disclosure requirements, it could save considerable time and money on the project and could more quickly build, develop, and sell the units. Notably, Swire's vice-president, Stephen Owens filed an affidavit stating:

> Swire used two different ILSA exemptions for a variety of legitimate business reasons. For example, obtaining the exemptions gave Swire greater flexibility in deciding when to market and sell the project, and when to commence construction. This flexibility, in turn, allowed Swire to save money and time when it came to financing the project, hiring and contracting for labor and materials, and managing the project.

18

Case No. 08-23444-CIV-ALTONAGA/Brown

(Affidavit of Stephen Owens [D.E. 94-1] at ¶ 9).

Plaintiffs do not dispute Mr. Owen's statement, rather, they contend that saving time and money is not a legitimate business purpose. But while they make this bald assertion, Plaintiffs cite to no interpretive guidelines or case law to support this position. Neither do Plaintiffs create a reasonable, logical argument to support this assertion. Indeed, one of the primary purposes of a for-profit business is to make the greatest possible profit. Swire's ability to have greater flexibility in marketing and construction could generate a significant financial return in the overall project.

As the court explained in *Gentry*, "the threshold for establishing a legitimate business purpose sufficient to qualify for an exemption may be low, but it requires some factual evidence demonstrating that the method of disposition has some bona fide, real world objective that manifests a legitimate business purpose." *Id*. at 1248. Swire's proffered evidence meets that low threshold. Structuring the purchase agreements to save time and money is a legitimate business purpose; Plaintiffs have not come forward with any disputed factual issues challenging Swire's assertion that they could save time and money by arranging the deal in the way they did.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because Plaintiffs have not rebutted Swire's factual assertion of a legitimate business purpose, there is no triable issue of fact concerning whether Swire violated the ILSFDA. Plaintiffs' argument that by violating the

19

Case No. 08-23444-CIV-ALTONAGA/Brown

ILSFDA, Swire *per se* violated the FDUTPA, necessarily fails.[6]   *See Dolphin, LLC v. WCI Communities, Inc.*, No. 07-80241-Civ, 2008 WL 6894512, at * 4 (S.D. Fla. Feb. 20, 2008) ("[B]ecause the court today grants summary judgment in favor of defendant on plaintiff's ILSFDA claim, that claim cannot support a claim for violation of the FDUTPA.").

> b.    *Lack of Right of Assignment*

Plaintiffs allege the fact that Swire would not allow them to sell the unit to a ready, willing and able buyer for the same price at which Plaintiffs purchased the unit was a violation of the FDUTPA.  Plaintiffs claim that

> Swire's deceptive trade practices have damaged Plaintiffs in that Plaintiffs were not fully apprised of their rights or obligations under the Agreement prior to the execution of the Agreement or its assignment.
>
> Had Swire informed Double AA of its restriction on the resale or transfer of the unit (minimum selling price of $1,500,000.00) Double AA would not have executed the Agreement.

(*Am. Compl.* at ¶¶ 92-93).

Swire contends the contract was clear that there was no right of assignment without Swire's approval.  The Purchase and Sale Agreement stated:

> Transfer or Assignment.  Buyer shall not be entitled to assign this Agreement or its rights hereunder without the prior written consent of Seller, which may be withheld by Seller with or without cause (and even if Seller's refusal to grant consent is unreasonable).  To the extent that Seller consents to any such assignment, said consent may be conditioned in any manner whatsoever, including, without limitation, charging an assignment or transfer fee. . . .

---

[6] Swire also argues that Plaintiffs' ILSFDA claim fails on the grounds that Plaintiffs brought their rescission claims untimely, and that Rodriguez, as an assignee, has no standing to bring an ILSFDA claim. Because the Court finds there was no ILSFDA violation, these defenses are not addressed.

Case No. 08-23444-CIV-ALTONAGA/Brown

(*Agreement* at ¶ 22).  Swire notes that these terms came as no surprise to Plaintiffs, and the contract allowed Plaintiffs to review all of the contract terms and cancel within 15 days.  According to Swire, no reasonable fact finder could find the assignment restriction deceptive.  The undersigned agrees.

Plaintiffs' only argument on this issue is that the provision containing the restriction on assignment was not freely negotiated, and is therefore unenforceable.  Plaintiffs rely on the earlier Order on Swire's Motion to Dismiss, in which the Court cited the <u>Restatement (Second) of Property: Landlord Tenant</u> 15.2(2) (1977), which states that a provision limiting transfer or assignment is not enforceable unless it is freely negotiated.  The Court then stated that whether the assignment restriction in this case was freely negotiated is a question of fact not appropriate for a resolution on motion to dismiss.  (*See* April 3, 2009 Order [D.E. 43] at 9).  Plaintiffs cite few facts to bolster their argument.  The totality of Plaintiffs' argument consists of the citation to a portion of a deposition in which Swire's vice-president for sales acknowledged that Swire prepares the purchase contracts without input from the buyer.  (*See Plaintiffs' Resp.* at 19).

Notably, the Court's Order on Swire's Motion to Dismiss was entered prior to Plaintiffs' Amended Complaint and addressed the issue of limitation on transfer and assignment in the context of the viability of Plaintiffs' claim of breach of the covenant of good faith and fair dealing, rather than as a FDUTPA violation.  While the limitation on transfer may or may not be unenforceable due to lack of free negotiations between the parties,[7] an unenforceable clause does not rise, of itself, to a violation of the FDUTPA.  A FDUTPA claim must, of necessity, allege a deceptive or unfair trade

---

[7] The Court is not deciding that the provision is unenforceable due to lack of free negotiation, as such a determination is not necessary to resolve the claim at issue here.

Case No. 08-23444-CIV-ALTONAGA/Brown

practice.  Plaintiffs do not even suggest that the limitation on assignment was deceptive, that it was concealed from them, or that they were coerced or hurried into agreeing to that provision.  *See Dolphin, LLC*, 2008 WL 6894512, at * 5 ("[T]here is no allegation, let alone any evidence, that plaintiff relied on the allegedly misleading statement in signing the contract.  This itself is fatal to plaintiff's claim because an FDUTPA claim must allege that the deceptive act or unfair practice actually caused plaintiff's claimed damages.").

The language of the limitation is abundantly clear, and Plaintiffs had ample time to consider the implications of the provision and cancel the contract if they so chose.  If they failed to read the provision, that of itself does not support their FDUTPA claim.  *See Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007) ("[A]ll plaintiffs are bound by the provisions of contracts they have executed, irrespective of whether they bother to read them.  Hence, Plaintiffs' admitted failure to read their Purchase Contracts prevents them from satisfying the reliance element of their claims for . . .  ILSA violations . . . [and] FDUTPA violations . . . .").  There is simply nothing deceptive or unfair in Swire's action in including the referenced provision in the Purchase and Sale Agreement, and the limitation of assignment does not support a claim under the FDUTPA.

c.    *Violation of Florida Statute Section 718.202*

Finally, Plaintiffs claim Swire violated the FDUTPA by their violation of Florida Statute Section 718.202.  As discussed, Swire's failure to establish two separate escrow accounts to hold the deposit of 20 percent of the purchase price violates the statute.  Nonetheless, a violation of section 718.202 does not, on its own, constitute a violation of the FDUTPA.

This issue was addressed in *Edgewater By the Bay, LLLP v. Gaunchez* (*In re Edgewater By*

22

Case No. 08-23444-CIV-ALTONAGA/Brown

*the Bay, LLLP*), No. 08-23611-BKC-RAM, 2009 WL 3719477 (Bankr. S.D. Fla. Oct. 30, 2009).

In *Edgewater*, the plaintiff claimed the defendant developer violated the FDUTPA because it failed

to comply with one of the provisions of section 718.202. *Id*. at *3. Specifically, the plaintiff alleged

that the escrow agent chosen by the developer was not independent of the developer, as the escrow

agent was also the developer's attorney. *Id*. According to plaintiff, the developer violated section

718.202(8), which resulted in a violation of the FDUTPA. *Id*. The court referenced a provision of

the FDUTPA which states:

> "Violation of this part" means any violation of this act or the rules adopted under this
> act and may be based upon any of the following as of July 1, 2006:
>
> ***
>
> Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of
> competition, or unfair, deceptive, or unconscionable acts or practices.

Fla. Stat. § 501.203(3)(c); *In re Edgewater By the Bay*, 2009 WL 3719477, at *3. While the words

of the statute are "broad in scope," the court determined that section 718.202 did not fall within the

scope of the FDUTPA. *Id*. The court reviewed opinions of various courts and the Federal Trade

Commission[8] as to what constitutes an "unfair" or "deceptive" trade practice and stated:

> A deceptive act has been defined by both Florida and federal courts as one that is
> likely to mislead consumers. . . . Florida courts have construed the federal unfair
> practice standard as an act that "offends established public policy and one that is
> immoral, unethical, oppressive, unscrupulous or substantially injurious to
> consumers."

---

[8] The FDUTPA provides that when analyzing what constitutes an unfair or deceptive practice,
"consideration and great weight shall be given to the interpretations of the Federal Trade Commission and
federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act . . . ." *In re Edgewater By the Bay*,
2009 WL 3719477, at *4; Fla. Stat. § 501.204(2).

Case No. 08-23444-CIV-ALTONAGA/Brown

*Id*. at *4. (internal citations omitted).  Given these standards, the court determined that to deem any statutory violation a *per se* violation of the FDUTPA would be an overly broad and unfounded reading of the statute, and held that section 718.202 did not fall within the scope of the FDUTPA. *Id*.

The undersigned agrees with the reasoning in *Edgewater*.  Not only is the overall purpose of the FDUTPA to prevent unfair and deceptive trade practices, as evidenced by its title, but the subsection of the statute that references other statutory violations expressly states that a FDUTPA violation will exist where the underlying statute violated was one "which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). Section 718.202, and its escrow provisions, are not designed to proscribe unfair or deceptive trade practices.  As one Florida court has explained, "[t]he obvious purpose of section 718.202 is to protect purchasers under preconstruction condominium contracts from loss of their deposits should the developer fail to perform its contractual obligations." *First Sarasota Service Corp. v. Miller*, 450 So. 2d 875, 878 (Fla. 2d DCA 1984).

As to the specific provision violated by Swire – the failure to establish two separate escrow accounts – there is no indication that the provision is designed to prevent unfair or deceptive trade practices.  Rather, the purpose would appear to be to separate funds so that the developer maintains a discrete account for the 10 percent which may not be used for construction purposes.  The subsection is ministerial in nature, rather than designed to prevent misleading or deceptive acts, and does not fall within the ambit of the FDUTPA.

24

Case No. 08-23444-CIV-ALTONAGA/Brown

3.      Count V: Breach of Covenant of Good Faith and Fair Dealing

Swire's final argument in favor of summary judgment is that Plaintiffs' claim of breach of the covenant of good faith and fair dealing fails as a matter of law.  Plaintiffs allege Swire breached the covenant of good faith and fair dealing by unfairly restricting Plaintiffs' right of alienation of the property.  The Eleventh Circuit, interpreting Florida law, has explained:

> Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations.  *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999).  A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation.  *Id.*

*Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).  The court further stated, "a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id*. at 1152 (citations omitted).

Swire argues that there is no underlying breach of an express term of the Purchase and Sale Agreement; thus, the claim of breach of the covenant of good faith and fair dealing cannot stand.[9] The Purchase and Sale Agreement expressly states that Swire can restrict transfer or assignment of the unit.  (*See Agreement* at ¶ 22).  When Plaintiffs sought to sell the unit to another buyer for the original sale price of $1,160,000, Swire refused to allow the transfer.  Because Swire was permitted to refuse the transfer under the plain language of the contract, it did not breach any material term by

---

[9] Plaintiffs do not address this argument in their Response to Swire's Motion for Summary Judgment. In fact, Plaintiffs do not address Count V in any fashion in either their own Motion or in their Response to Swire's Motion, and therefore concede the issue.

Case No. 08-23444-CIV-ALTONAGA/Brown

the refusal.  Without an underlying breach of an express term of the contract, Plaintiffs' claim for

breach of the covenant of good faith and fair dealing fails.  Accordingly, summary judgment is

granted in favor of Swire on this count.

## IV.  CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that:

1.    Plaintiffs' Motion for Summary Judgment **[D.E. 93]** is **GRANTED in part and DENIED in part**.  Plaintiffs' Motion for Summary Judgment is GRANTED as to Count II for Declaratory Judgment.  Plaintiffs' Motion for Summary Judgment as to Count IV for Breach of Contract is DENIED.[10]

2.    Swire's Motion for Summary Judgment **[D.E. 89]** is **GRANTED in part and DENIED in part**.  Swire's Motion for Summary Judgment is GRANTED as to Count  III, Violation of the FDUTPA; Count IV, Breach of Contract; and Count V, Breach of the Covenant of Good Faith and Fair Dealing.  Swire's Motion for Summary Judgment as to Count I is DENIED.

3.    Given that trial on the remaining claim for declaratory judgment will be non-jury, Defendants' Motion for Leave to File Unilateral Jury Instructions **[D.E. 122]** is **DENIED** as moot.

---

[10] Plaintiffs did not move for summary judgment on Counts I, III or V.

26

Case No. 08-23444-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of December, 2009.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record