## UNITED STATES DISTRICT COURT
### Southern District of Florida

|  |  |  |
|---|---|---|
| Double AA International Investment Group, Inc. and Daymi Rodriguez, | ) ) ) | |
| Plaintiffs, | ) ) ) | **Civil Action No. 08-23444** |
| vs. | ) ) ) | **ALTONAGA/BROWN** |
| Swire Pacific Holdings, Inc., a Delaware Corporation, and Lawyers Title Insurance Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT LAWYERS TITLE INSURANCE CORPORATION, INC.'S TRIAL BRIEF

Defendant Lawyers Title Insurance Corporation ("Lawyers Title") hereby files its Trial Brief and states as follows.

### Statement of Facts

This action arises from a Purchase Agreement executed on February 2, 2005 for the sale and purchase of apartment 3202 at the Asia Condominium located in Miami, Florida for $1,160,000.00 by Plaintiff Double AA International Investment Group, Inc. ("Double AA") through Plaintiff Daymi Rodriguez ("D. Rodriguez") and Jose Rodriguez ("J. Rodriguez") from Defendant Swire Pacific Holdings, Inc. ("Swire"). Joint Pretrial Stipulation ("JPS") [DE 121] at ¶ 5 xvi (Tab #1). Double AA subsequently assigned the Purchase Agreement to Plaintiff D. Rodriguez. JPS at ¶ 5 xxxii.

Lawyers Title and Defendant Swire Pacific Holdings ("Swire") entered into an Escrow Agreement on January 25, 2005, for Lawyers Title to be Swire's escrow agent and to hold all deposits it receives from Swire's purchasers for the Asia Condominium. JPS at ¶ 5 vii (Tab # 6).

The Purchase Agreement expressly includes (and incorporates by reference) the Escrow Agreement between Swire and Lawyers Title. JPS at ¶ 5 xvi. In accordance with the Escrow Agreement, Swire through Lawyers Title established a proper Escrow Account in accord with the Escrow Agreement and Florida Statute § 718.202, and otherwise complied with the statute. Damaris Rodriguez deposition [DE 92-1] (Tab # 3) at 27-29. All deposits from all of Swire's purchasers, including the Plaintiffs, have been properly held and maintained by Lawyers Title.

The Purchase Agreement required Plaintiffs to pay a 20% deposit or $232,000.00 towards the $1,160,000.00 purchase price for unit 3202 at Asia prior to closing. On September 20, 2004, Plaintiffs made a $50,000.00 reservation deposit for the unit at issue. JPS at ¶ 5 xiii. Swire delivered the reservation deposit to Lawyers Title to hold in accordance with the Escrow Agreement. JPS at ¶ 5 xiv. Lawyers Title deposited the $50,000.00 on or about September 23, 2004 in a Business High Performance Money Market Account (No. 2000026521273) referred to as the "reservation" account at Wachovia Bank, N.A. JPS [D.E. 121] at ¶ 5 xv; Damaris Rodriguez deposition at 27, 33-34 (Exhibit 3); Lawyers Title's Memorandum in Opposition to Plaintiffs' Motion for Sanctions ("Lawyers Title's Opp.") [D.E. 74-3] at 3 of 10 (Exhibit 3).

On or about February 7, 2005, Lawyers Title deposited an additional $66,000.00 in the reservation account (No. 2000026521273). JPS at ¶ 5 xx; Damaris Rodriguez deposition at 28, 35 (Exhibit 3); Lawyers Title's Opp. at 5 of 10 (Exhibit 3). On or about February 24, 2005, Lawyers Title transferred $66,000.00 to another Business High Performance Money Market Account (no. 2000026526647) referred to as the "contract" or "special" account. JPS at ¶ 5 xxiii; Damaris Rodriguez deposition at 28-31, 36-38 (Exhibit 3); Lawyers Title's Opp. at 6-8 of 10 (Exhibit 3). The "contract" account is "special" because it is not a commercial account, monies for all units are commingled, it is insured by FDIC and protects purchasers from developers using deposits prior to construction and closing. Damaris Rodriguez deposition at 22, 23. FDIC

treats the contract account as separate accounts. *Id.* at 23. Monies were transferred to the "contract" or "special" account because Plaintiffs executed the Purchase Agreement on February 2, 2005. Damaris Rodriguez deposition at 11-14, 19-20, 25. Accordingly, prior to February 24, 2005, the reservation account was holding $116,000.00.

On or about May 18, 2005, Lawyers Title deposited an additional $116,000.00 from Plaintiffs in the "contract" or "special" account. JPS at ¶ 5 xxiv-xxvi; Damaris Rodriguez deposition at 31, 39-40 (Exhibit 3); Lawyers Title's Opp. at 9-10 (Exhibit 3). Then on May 25, 2005, Lawyers Title transferred remaining $50,000.00 in the "reservation" account plus interest in the amount of $404.38 to the "contract" or "special" account (no. 2000026526647). JPS at ¶ 5 xxvii; Damaris Rodriguez deposition at 29, 32, 35, 36, 41-43 (Exhibit 4). Accordingly, between May 18, 2005 and May 25, 2005, the "contract" or "special" account had $166,000.00. As of May 25, 2005, Lawyers Title was holding $232,404.38 in that account. JPS at ¶ 5 xxviii; Damaris Rodriguez deposition at 37. Lawyers Title maintains a transaction log and spreadsheet to keep track of what is deposited and disbursed on each unit to protect the purchasers' interests. Damaris Rodriguez deposition at 23, 41-43 (Exhibit 4) (Tabs # 8 and 9). Lawyers Title also requires Swire to provide a certification to disburse monies from the escrow account.

On April 5, 2006, Swire provided written certification to Lawyers Title that construction of the improvements for the Asia Condominium had begun; that Swire requested Lawyers Title to release funds for construction in accord with Florida law and the contracts; that Swire would use the funds in the actual construction and development of the Asia Condominium; and that no part of those funds would be used for salaries or commissions, or for expenses of salesmen or for advertising purposes. JPS at ¶ 5 xxix (Tab # 7). Under the circumstances, Lawyers Title was authorized to withdraw $116,000.00 from the Asia Escrow Account (which equaled that portion of the deposits in excess of 10% of the applicable purchase price) and disburse that money to

Swire consistent with the Purchase Agreement, the Escrow Agreement and Florida law. JPS at ¶ 5 xxix. After that disbursement, Lawyers Title has held the remaining deposit of $116,000.00, plus accumulated interest, in the Escrow Account in the Plaintiffs' name, continues to hold it, will do so until this dispute is resolved, is directed as to how to disburse the money by this Court, or this Court grants Lawyers Title's counterclaim for Interpleader. JPS at ¶ 5 xxx.

On October 1, 2008, approximately one month after Plaintiffs were scheduled to close on Unit 3202 at Asia (Tab # 14), Plaintiffs' counsel sent Lawyers Title's agent a letter informing it that Plaintiffs had cancelled the Purchase Agreement and that the money in escrow should not be released. (Tab # 10). On October 14, 2008, Plaintiffs' counsel sent a letter to Swire's Sales Director purporting to cancel the Purchase Agreement on the alleged grounds that Swire materially breached the Purchase Agreement. JPS at ¶ xxxiv. On that same date, counsel for Swire sent Plaintiffs' counsel a letter explaining why Swire had not breached the Purchase Agreement. JPS at ¶ xxxv. Plaintiffs did not seek to rescind or cancel the Purchase Agreement prior to October 14, 2008. JPS at ¶ xxxvi.

### Procedural History

Plaintiffs filed suit against Defendants Swire and Lawyers Title on December 12, 2008[1] and amended their complaint on June 11, 2009. The only count against Lawyers Title is Count II – Declaratory Action Against Swire and Lawyers Title. Amended Complaint ("Am. Compl") [DE 47] at ¶¶ 68-76. The only wrongdoing alleged against Lawyers Title is that it refused to release the $116,000.00 currently held in escrow to Plaintiffs despite repeated requests.[2] *Id.* at ¶¶

---

[1] The first Complaint did not contain any allegations that Swire and/or Lawyers' Title violated Fla. Stat. § 718.202 by failing to establish two (2) separate escrow accounts.

[2] Lawyers Title, though, asserts that while Plaintiffs certainly made a claim for the money being held in escrow, *see* October 1, 2008 letter from Plaintiffs' counsel to Lawyers Title (Tab # 10), there is no evidence presented in this record to support Plaintiffs' claims that they demanded that Lawyers Title disburse the money presently held in escrow to them.

4

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ◆ TEL: (954) 523-7008

72, 74. Plaintiffs simply requested this Court to declare their rights under Fla. Stat. § 718.202

with respect to the $116,000.00 currently held in escrow and entitlement to the $116,000.00

already disbursed. *Id.* at ¶¶ 75-76. This Count does not request this Court to declare that

Lawyers Title violated Fla. Stat. § 718.202 by failing to establish a separate "special escrow

account" for monies Swire received in excess of 10% of the purchase price. This statement is

further supported by the *ad damnum* clause for Count II of the Amended Complaint which states:

> Wherefore, Plaintiffs request that this Court enter a declaratory judgment stating
> that (1) Swire has no right, interest, or title to the $116,000.00 held in escrow; (2)
> that Lawyers Title must release the escrowed funds, plus any accumulated
> interest, to Ms. Rodriguez; (3) that Ms. Rodriguez has a right to recover the
> additional monies paid in deposit ($116,000.00) plus accumulated interest on the
> whole amount ($232,000.00) as provided in § 718.202(5); and, (4) awarding
> Plaintiffs' attorney's fees and costs and any other relief this Court deems just and
> proper.

The Amended Complaint only alleges that Defendant, Swire, and not Lawyers Title, violated

Fla.Stat. § 718.202 (1) and (2) by failing to establish a separate "special escrow account" for

Plaintiffs' deposits totaling $232,000.00. *Id.* at ¶¶ 19-23, 94, 96, 102.

Defendant, Lawyers Title, filed its Answer, Affirmative Defenses and Counterclaim for

Interpleader ("Counterclaim") on January 23, 2009. [DE 7]. Lawyers Title filed its Answer and

Affirmative Defenses ("Answer") to the Amended Complaint on June 23, 2009. [DE 49].

Lawyers Title's defenses include but are not limited to its reliance upon the terms and conditions

of the Purchase Agreement and Escrow Agreement, Plaintiffs' acquiescence or agreement to

hold and disburse monies held in escrow, waiver, estoppel, and failure to comply with conditions

precedent to filing suit. Answer at ¶¶ 25-34. The Counterclaim for Interpleader alleges Lawyers

Title has no interest in the conflicting claims for the $116,000.00 held in escrow and cannot

determine which party has superior title to the proceeds. Counterclaim at ¶¶ 19-23. Lawyers

5

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

Title requested that the Court require Plaintiffs and Defendant Swire to interplead their rights to payment and it be discharged of all liability. Counterclaim at *Ad Damnum* clause.

Plaintiffs answered Lawyers Title's Counterclaim for Interpleader on February 23, 2009. *See* Double AA and Daymi Rodriguez' Reply to Lawyers Title's Affirmative Defenses and Answer, Defenses and Affirmative Defenses to Lawyers Title's Counterclaim ("Plaintiffs' Answer") [DE 35]. Plaintiffs defend against Lawyers Title's counterclaim by alleging Lawyers Title cannot interplead Plaintiffs and Swire's rights to payment because Swire did not formally demand monies from Lawyers Title, the Escrow Agreement is void and Lawyers Title is estopped from disclaiming any responsibility for disbursing $116,000.00 to Swire for construction purposes. *Id.* at ¶¶ at 24, 28, and 29. Plaintiffs further allege Lawyers Title is not an innocent stakeholder because it breached its fiduciary duty to Plaintiffs and was negligent in failing to comply with Fla. Stat. § 718.202(2) and (3). *Id.* at ¶¶ at 25, 27. On January 12, 2010, this Court at calendar call held Plaintiffs cannot seek affirmative relief from their affirmative defenses against Lawyers Title.

Plaintiffs moved for summary judgment *only* against Swire on October 13, 2009. Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law ("Plaintiffs' MSJ") [DE 93]. Specifically, Plaintiffs requested the Court to determine that:

> (a) Defendant Swire Pacific Holdings, Inc. ("Swire") failed to comply with Fla. Stat. § 718.202(1)-(2) (2005); (b) Plaintiffs' properly voided the Purchase Agreement under § 718.202(5); and (c) Plaintiffs are entitled to a refund of their $232,2000.00 deposit plus interest as provided in § 718.202(5).

*     *     *

> Plaintiffs also seek summary judgment that, as a matter of law, Defendant Swire breached the Purchase Agreement when it failed to establish escrow accounts as required under § 718.202.

Plaintiffs' MSJ at 1. The Motion contains numerous allegations that Defendant Swire not Lawyers Title violated Fla. Stat. § 718.202. Plaintiffs' MSJ at 2, 4, 6, 12. Plaintiffs' allege that

6

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

the statute governs the rights and obligations of the developer not the escrow agent. Plaintiffs'
MSJ at 4. Further, it is alleged that the statute requires the developer not the escrow agent to
establish a separate "special escrow account." Plaintiffs' MSJ at 8.

On December 15, 2009, this Court entered an Order granting Plaintiffs' Motion for
Summary Judgment on Count II of the Amended Complaint for declaratory judgment on the
basis that Swire violated Fla. Stat. § 718.202 by failing to establish a separate "special escrow
account" for deposits in excess of 10% of the purchase price. Order [DE 124] at 9 and 11.[3] It is
unclear from a footnote whether this Court also entered summary judgment, *sua sponte*, against
Lawyers Title and what amount Lawyers Title is required to return to Plaintiffs. *Id*. at 11, fn 4.
The Order simply states "Plaintiffs are therefore entitled to a refund of their deposit funds from
Swire and Lawyers Title plus interest under Fla. Stat. 718.202(5)." *Id*. It is evident from
Plaintiffs' Motion for Further Relief [DE 131] that Plaintiffs are equally confused.

Again, Lawyers Title is presently holding $116,000.00, plus interest in escrow at HSBC
Bank and will do so until this dispute is resolved, JPS at ¶ 5 xxx, or this Court grants its
Interpleader Counterclaim. Lawyers Title released the second $116,000.00 to Swire soon after
April 5, 2006, pursuant to the Escrow Agreement and Swire's written certification.[4]

---

[3] The Order states "the only reasonable conclusion is that the statute requires a developer to
establish two separate escrow accounts if buyer deposits more than 10 percent of the purchase
price. Given that requirement, and given the express language of section 718.202(5), Swire's
failure to establish two separate escrow accounts for Plaintiffs'' deposit violated the statute, and
rendered the Purchase and Sale Agreement voidable by the Plaintiffs'." Order at 9. It also states
"Swire's refusal to return the funds is in direct contravention of the statute." *Id*. The Order
continues: "Nonetheless, as noted, Swire violated section 718.202 by failing to establish two
separate escrow accounts." *Id* at 11.

[4] Lawyers Title intended to file a timely Motion for Relief from this Court's December 15, 2009
Order, pursuant to F.R.C.P. 60(b)(6) and Motion for Clarification of the Order [DE 133] denying
Plaintiffs' Motion for Further Relief [DE 131]; however, same was not necessary because on
January 12, 2010, this Court held at calendar call it will entertain Lawyers Title's arguments to
Plaintiffs' Motion for Summary Judgment and defenses against Count II of the Amended
Complaint.

## ARGUMENT

**I.**     **There Was No Violation of Section 718.202(2), Fla. Stat.**

     **A.**     **This Court Lacked Jurisdiction to Entertain and Adjudge Matters Not at Issue Against Lawyers Title**

On December 15, 2009, this Court granted Plaintiffs' Summary Judgment on Count II of the Amended Complaint and held Fla. Stat. § 718.202 requires monies in excess of 10% of the purchase price to be deposited in a separate "special escrow account." *See* Order. It is unclear from the Order whether summary judgment was also granted against Lawyers Title for violating Fla. Stat. § 718.202 or whether Lawyers Title is simply required to release monies currently held in escrow to Plaintiffs.

If summary judgment was granted against Lawyers Title on Count II of the Amended Complaint for violating Fla. Stat. § 718.202 then same must be vacated. As set forth above, Plaintiffs moved for summary judgment against Swire, and not Lawyers Title, on the basis that Swire violated Fla. Stat. § 718.202 by not establishing two separate accounts. This Court cannot grant relief, *sua sponte*, to Plaintiffs on matters not raised or at issue against Lawyers Title. Plaintiffs' allege in both the Amended Complaint and Motion for Summary Judgment that Swire, and not Lawyers Title, violated Fla. Stat. § 718.202 by not establishing a separate "special escrow account." *See* Am. Compl. at ¶¶ 19-23, 68-76, 19-23, 94, 96, 102 and Plaintiffs' MSJ at 2, 4, 6, 12. Lawyers Title did not have notice that it had to respond to Plaintiffs' Motion for Summary Judgment and to come forward with evidence opposing Plaintiffs' Motion that it did not violate the statute.[5]

---

[5] The Court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

8

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

It is well established in Florida that "a trial court lacks jurisdiction to entertain and adjudge matters which have not been the subject of proper pleadings and notice." *Instituto Patriotico Y Cocente San Carlos, Inc. v. Cuban American National Foundation*, 667 So. 2d 490 (Fla. 3rd DCA 1996)(district court struck findings and conclusions made by the trial court in a final summary judgment for declaratory relief that was never presented as issues in the pleadings or argument on the motion for summary judgment.) The Florida Supreme Court in *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768 (Fla.1927), explained:

> The jurisdiction and power of a court remain at rest until called into action by some suitor; it cannot by its own action institute a proceeding sua sponte. The action of a court must be called into exercise by pleading and process, prescribed or recognized by law, procured or obtained by some suitor by filing a declaration, complaint, petition, cross-bill, or in some form requesting the exercise of the power of the court. If a court should render a judgment in a case where it had jurisdiction of the parties, upon a matter entirely outside of the issues made, it would, of necessity, be arbitrary and unjust as being outside the jurisdiction of the subject matter of the particular case, and such judgment would be void and would not withstand a collateral attack, for upon such matter a presumption would arise that the parties had had no opportunity to be heard.

*See Burton v. City of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999)(In a disparate impact claim arising from regulations promulgated under § 602 of Title VI the Eleventh Circuit held "[a] district court possesses the power to enter summary judgment sua sponte provided the losing party 'was on notice that she had to come forward with all her evidence.'" *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Davken, Inc. v. City of Daytona Beach Shores*, 2006 WL 1232819 (M.D. Fla. 2006)(*Sua sponte* dismissal prohibited when party does not receive notice of intent to dismiss or an opportunity to respond. Additionally, Court could not consider opposing party's argument to motion for summary judgment because it would deprive moving party opportunity to respond and create due process concerns. *citing Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F. 2d 524, 527 (11th Cir. 1983)); *In re Janet Stickney*, 370 B.R. 31 (Bankr. D. N.H. 2007)("The absence of any opportunity for the Trustee to be heard on

9

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ◆ TEL: (954) 523-7008

the approval of the waiver of the chapter 7 filing fee arguably deprived the trustee of due process of law. It is the availability of due process, namely the opportunity to present evidence and fully argue a question in open court, that is the basis for the requirement that the movant demonstrate extraordinary circumstances to justify relief under FRCP 60(b)(6)"); *See also Cortina v. Cortina*, 98 So. 2d 334, 337 (Fla. 1957); *Cravero v. Florida State Turnpike Auth.*, 91 So. So. 312 (Fla. 1956); *In re Estate of Hatcher*, 439 So. 2d 977 (Fla. 3rd DCA 1983).

Here, the Order granting Plaintiffs' Motion for Summary Judgment as to Count II of the Amended Complaint against Lawyers Title is completely outside of the issues made by the Amended Complaint and Plaintiffs' Motion for Summary Judgment [DE 93]. The issue regarding whether Lawyers Title was governed by Fla. Stat. § 718.202 and violated same by not establishing a separate "special escrow account" was not litigated or presented by the pleadings requesting relief against this Defendant. In essence, Lawyers Title was denied due process of law by being deprived of the opportunity to respond to Plaintiffs Motion for Summary Judgment and present evidence. Accordingly, to the extent the Order partially granting Plaintiffs' Motion for Summary Judgment was entered against Lawyers Title same should be vacated.

**B.    Lawyers Title Did Not Violate Fla. Stat. § 718.202**

Lawyers Title did not violate Fla. Stat. § 718.202 (Tab # 17) because its handling of the escrow deposit is consistent with the intent and purpose of the statute.  Section 718.202, Florida Statutes, in pertinent part, states:

> (1) If a developer contracts to sell a condominium parcel and the construction, furnishing, and landscaping of the property submitted or proposed to be submitted to condominium ownership has not been substantially completed in accordance with the plans and specifications and representations made by the developer in the disclosures required by this chapter, the developer shall pay into **an escrow account** all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price. The escrow agent shall give to the purchaser a receipt for the deposit, upon request. In lieu of the foregoing, the division director has the discretion to accept other assurances, including, but not limited to, a surety bond or an irrevocable letter of credit in an amount equal to

the escrow requirements of this section. Default determinations and refund of deposits shall be governed by the escrow release provision of this subsection. Funds shall be released from escrow as follows....

\* \* \*

(2) All payments which are in excess of the 10 percent of the sale price described in subsection (1) and which have been received prior to completion of construction by the developer from the buyer on a contract for purchase of a condominium parcel shall be held in a special escrow account **established as provided in subsection (1)** and controlled by an escrow agent and may not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer. If the money remains in this special account for more than 3 months and earns interest, the interest shall be paid as provided in subsection (1).

(3) If the contract for sale of the condominium unit so provides, the developer may withdraw escrow funds in excess of 10 percent of the purchase price from the special account required by subsection (2) when the construction of improvements has begun....

(emphasis added).

Lawyers Title's handling of the escrow deposit is consistent with the intent and purpose of the statute. "The obvious purpose of Fla. Stat. § 718.202 is to protect purchasers under preconstruction condominium contracts from loss of their deposits should the developer[6] fail to perform its contractual obligations." *First Sarasota Serv. Corp. v. Miller*, 450 So. 2d 875, 878 (Fla. 2nd DCA 1984).

Lawyers Title complied with the statute because it held the deposits in two accounts until Plaintiffs executed the Purchase Agreement at which time all monies were transferred to the

---

[6] Part II of Chapter 718, Condominiums, reads "Rights and Obligations of Developers", not escrow agents. The court in *Barrack v. State*, 462 So.2d 1196 (Fla. 4th DCA 1985), noted "[w]e are mindful that the subject law [Fla. Stat. § 718.202] places no specific controls over the escrow agent or agency receiving the funds, however, we do not perceive this as a defect." Thus, as the Eleventh Circuit has explained that if "[t]he primary principle of statutory construction requires courts to give effect to the plain meaning of the words used 'in their ordinary and usual sense'" and "to give meaning to every word and clause in a statute" then clearly the statute does not regulate or govern Lawyers Title, an escrow agent. *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines. v. CSX Transp., Inc.*, 522 F.3d 1190, 1194-95 (11th Cir. 2008) (*quoting Caminetti v. United States*, 242 U.S. 470, 485-86 (1917)).

11

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

"contract" or "special" account. Lawyers Title held $116,000.00 in the "reservation" account (no. 2000026521273) until February 24, 2005, and then transferred $66,000.00 to the "contract" or "special" account. The second $116,000.00 was deposited in the "contract" or "special" account on May 18, 2005. On May 25, 2005, the $50,000.00 in the "reservation" account was transferred and as of that date the "contract" or "special" account had $232,000.00. Lawyers Title kept track of all monies deposited and disbursed to the developer by keeping transaction logs and spreadsheets to protect the interests of the purchasers. Damaris Rodriguez deposition at 23, 41-43 (Tabs 8 and 9). Additionally, Lawyers Title requires written certification before it releases and disburses any of the deposits. *See, e.g.,* Tab # 7. Lawyers Title even sent a copy of the Escrow Agreement to the financial institution to ensure monies are properly deposited pursuant to the terms and conditions of the agreement. *Id.* at 11. It is Lawyers Title's position that the contract account is "special" because it is not a commercial account, monies for all units are commingled, it is insured by FDIC and protects purchasers from developers using deposits prior to construction. *Id.* at 22-23.

The statute does not require a separate "special escrow account." It is apparent from Fla. Stat. § 718.202 that the establishment or creation of the escrow account is governed by Fla. Stat. § 718.202(1). That subsection requires the developer to "pay into *an* escrow account all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price." Fla. Stat. § 718.202(2) refers the developer back to subsection (1) when creating or establishing the account. This language was added by the Florida legislature in 1984[7] and

---

[7] Laws 1984, c. 84-368, § 9 adds/deletes the following words from the statute:

> (1) If a developer contracts to sell a condominium parcel and the construction, furnishing, and landscaping of the property submitted or proposed to be submitted to condominium ownership has not been substantially completed in accordance with the plans and specifications and representations made by the developer in the disclosures required by this chapter, the developer shall pay into an escrow

supports the conclusion that only one escrow account is required for the deposits. Moreover, subsection (1)'s use of the word "*an*" clearly means that the developer is only required to establish one account not multiple accounts. The use of the word "special" does not necessarily mean two separate escrow accounts.

Additionally, in 1974,[8] the Florida legislature deleted from subsection (2) language forbidding the developer from commingling monies in the escrow account. A closer reading of

---

account ~~established with a bank or trust company having trust powers, an attorney who is a member of The Florida Bar, a real estate broker registered under chapter 475, any financial lending institution having a net worth in excess of $5 million, or a title insurance company authorized to insure title to real property in the State of Florida~~, all payments up to 10 percent of the sale price received by the developer from the buyer towards the sale price. The escrow agent shall give to the purchaser a receipt for the deposit, upon request. In lieu of the foregoing, the division director shall have the discretion to accept other assurances, including, but not limited to, a surety bond or an irrevocable letter of credit in an amount equal to, a surety bond or an irrevocable letter of credit in an amount equal to the escrow requirements of this section. Default determinations and refund of deposits shall be governed by the escrow release provision of this subsection. ~~The escrowed funds may be deposited in separate accounts or in common escrow or trust accounts or commingled with other escrow or trust accounts handled by or received by the escrow agent. The escrow agent may invest the escrow funds in securities of the United State or any agency thereof or in savings or time deposits in institutions insured by an agency of the United States.~~ Funds shall be released from escrow as follows....

(2) All payments in excess of the 10 percent of the sale price described in subsection (1) received prior to the completion of construction by the developer from the buyer on a contract for purchase of a condominium parcel shall be held in a special escrow account established as provided in subsection (1) and controlled by an escrow agent ~~by the developer or his agent~~ and my not be used by the developer prior to closing the transaction, except as provided in subsection (3) or except for refund to the buyer. If they monies remains in this special account for more than 3 months and earns interest, the interest shall be paid as provided in subsection (1).

[8] Laws 1974, c. 74-104, § 13 adds/deletes the following words from Fla. Stat. § 711.67, which was subsequently redesignated as Fla. Stat. § 718.202. *See also* Journal of the Senate 1974, § 13. ~~(1)~~ *(2)* Whenever money shall be ~~deposited or advanced~~ *paid to a developer* on a contract for the purchase of a condominium ~~unit prior to the filing of a notice of commencement for the condominium project pursuant to part I of chapter 713, such money~~ *or cooperative parcel prior to commencement of construction such money in excess of five percent (5%) of the sale price of*

the 1974 amendments indicates that the word "special" was used in order to prevent the developer from comingling the deposits received prior to the filing of a notice of commencement with its own funds. In 1974, there was no requirement that any of the purchaser's deposits be deposited into an escrow account. The requirement that up to five percent (5%) of the purchase price of the condominium be deposited into an escrow account was not added until 1974 and it took effect in 1975. Sometime between 1974 and 1984, the Florida legislature added the word "escrow" in subsection (2) between the words "special" and "account". Then, in 1984, the Florida legislature added the phrase "established in subsection (1)" after the phrase "special escrow account". The reason for these additions was to require that all deposits had to be deposited into an escrow account. Since the escrow agent is independent from the developer, the purchaser need no further protection from the developer improperly using their deposits. The reason for the escrow agent is to protect the purchaser.

Notwithstanding the plain meaning of the statute, the Escrow Agreement that Lawyers Title entered into with Swire does not require it to deposit monies into two separate escrow accounts. Damaris Rodriguez deposition at 21-22 (Tab # 6). The Escrow Agreement only requires Lawyers Title to (1) "acknowledge receipt of the deposit … and deliver an executed copy of same to Developer, and to the individual unit purchaser upon request;" (2) disburse the deposit and interest earned under certain conditions, and (3) "invest the deposits … in savings or time deposits in institutions insured by any agency of the United States or in securities of the United States…." (Tab # 6). Lawyers Title's responsibilities are "limited to the safekeeping of the deposits and the disbursement of same in accordance with the written instruction" of the Escrow Agreement. *Id.* This responsibility is similar to that of an attorney's trust account, which

*the parcel* shall be held in a special account by the ~~seller~~ *developer* or his duly authorized agent and shall not be ~~commingled with the funds of the seller or his agent prior to the filing of a notice of commencement~~ *used by developer prior to closing of the transaction, except as provided in subsection (3), or for refund for the buyer.*

14

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

does not require the attorney to have more than one account no matter the number of clients that he/she is holding money on behalf. The Escrow Agreement is incorporated by reference in the Purchase Agreement and, therefore, is binding on Plaintiffs.[9] Plaintiffs' MSJ at 15-30. The Purchase Agreement puts Plaintiffs on notice that their "deposits will be held in escrow by LAWYERS TITLE INSURANCE CORPORATION … in accordance with the Escrow Agreement contained in the Condominium Documents." *Id.* Accordingly, Count II of Plaintiffs' Amended Complaint against Lawyers Title must fail and judgment should be entered in its favor.

## C.  Failure to Comply With the Provisions of Fla. Stat. § 718.202 Renders the Contract Voidable Not Void

Even if Lawyers Title violated the statute by failing to hold monies in two separate escrow accounts the violation renders the contract voidable not void. Fla. Stat. § 718.202(5) in pertinent part states:

> The failure to comply with the provisions of this section renders the contract *voidable* by the buyer, and, if voided, all sums deposited or advanced under the contract shall be refunded with interest at the highest rate then being paid on savings accounts, excluding certificates of deposit, by savings and loan associations in the area in which the condominium property is located.

(emphasis added). A contract that is voidable is still enforceable and can be cured. The Court in

*Pitts v. Pastore*, 561 So. 2d 297 (Fla. 2nd DCA 1990), explained:

> "There is this difference between the two words "void" and "voidable": *void* in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it. The term "*void*," however, as applicable to conveyances or other agreements, has not at all times been used with technical precision, not restricted to its peculiar and limited sense, as contradistinguished from "voidable,"; it being frequently introduced, even by legal writers and jurists, when the purpose is nothing further than to indicate that a contract was invalid, and not binding in law. But the distinction between the terms "void" and "voidable," in their application to contracts, is often

---

[9] The Purchase Agreement states, in pertinent part, that: "The escrow agreement is incorporated into this Agreement as if stated at length here…. Section 4. However, Lawyers Title notes that this Court, in its Order, held that the Escrow Agreement is not binding on the Plaintiffs. Order at 10-11.

> one of great practical importance; and, whenever entire technical accuracy is required, the term "void" can only be properly applied to those contracts that are of no effect whatsoever, such as are a mere nullity, and incapable of confirmation or ratification.

*See also District Bd. of Trustees v. Morgan*, 890 So.2d 1155 (Fla. 5th DCA 2005) (Tab # 20).

Here, the contract could not be cured because Lawyers Title already disbursed the $116,000.00 to be used for construction when it first received notice from Plaintiffs in February 2009 that monies should be kept in two separate escrow accounts. The notice from the Plaintiffs occurred more than four (4) years after the monies were disbursed. Lawyers Title did not become aware there was a dispute between Swire and Plaintiffs until October 2008. While Lawyers Title is not a party to the Purchase Agreement, Swire put Plaintiffs on notice that 10% of their deposit would be used for construction purposes. Plaintiff's acquiesced or ratified the actions taken by Lawyers Title by not timely objecting to monies being disbursed to Swire for construction purposes, did not request a copy of the Escrow Agreement, and did not request an accounting evidencing how the monies were deposited. Plaintiffs simply accepted the receipts evidencing Lawyers Title received their $232,000.00 deposit. Accordingly, judgment should be granted in favor of Lawyers Title on Count II of Plaintiffs' Amended Complaint.

### D.   A Technical Violation of the Statute Does Not Render the Agreement Voidable When the Purpose of the Statute is Met

The failure to establish a separate "special escrow account" is a technical violation that does not render the contract voidable when the purpose of the statute is met. *See Gates v. Chrysler Corp.*, 397 So.2d 1187 (Fla. 4th DCA 1981). In *Gates,* it was alleged that Chrysler failed to make certain disclosures pursuant to federal regulation. The court held "[w]hether or not it applies need not detain us long because the violation was at most a technical one and contributed not at all to appellant's damages." *Id.* at 1189 (Tab # 19).

16

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

As stated previously, "the obvious purpose of section 718.202 is to protect purchasers under preconstruction condominium contracts from loss of their deposits should the developer fail to perform its contractual obligations." *First Sarasota Serv. Corp. v. Miller*, 450 So. 2d 875, 878 (Fla. 2nd DCA 1984). Here, Lawyers Title met the purpose of the statute by keeping monies in two separate accounts until Plaintiffs executed the Purchase Agreement, by being meticulous and keeping track of all deposits and disbursements through transaction logs and spreadsheets, and requiring a certification from Swire. This accounting is evident from the fact that Lawyers' Title is still holding the first $116,000.00, plus accumulated interest in escrow and will continue to do so until this dispute is resolved or this Court grants its counterclaim for Interpleader. Lawyers Title simply complied with the terms and conditions of the Escrow Agreement and Swire's written certification that authorized it to disburse the $116,000.00 for construction purposes and dictated how to handle the deposits.

Notwithstanding, the technical[10] violation, if any, did not result or contribute to Plaintiffs' damages. Plaintiffs' alleged damages has nothing to do with the fact that Lawyers Title did not maintain two (2) separate accounts for the deposits at all times. This argument is nothing more than a veiled attempt to avoid the performance of a contract that this Court held is otherwise valid. Accordingly, Count II of Plaintiffs' Amended Complaint against Lawyers Title must fail.

**E.**     **Plaintiffs Claim Is Time Barred Pursuant to Fla. Stat. §718.503**

Plaintiffs' claim to recover the deposit is time barred because they failed to rescind the Purchase Agreement incorporating the Escrow Agreement by reference within fifteen (15) days of executing same as required by Fla. Stat. § 718.503. This issue was addressed in *Zimbrano v. Indian Creek Holding, LLC, et. al*, Cause No. 09-20453-CIV-HUCK/O'SULLIVAN (S.D. Fla. June 4, 2009). In *Zimbrano* the purchasers of a condominium unit failed to close and filed suit to

---

[10] In its Summary Judgment Order, this Court, in fact, noted that: "the subsection [section 718.202(2)] is ministerial in nature...." Order at 24.

recover their deposit. The purchasers alleged the developer violated Fla. Stat. § 718.202(3) by failing to include a legend immediately above the signature line of the contract and therefore was voidable. The Court held the contract is voidable under the plain language of Fla. Stat. § 718.202 but only within fifteen (15) days of the date of the buyer's signature of the contract under Fla. Stat. § 718.503 and the contract. The first attempt to void the contract was more than a year after it was executed. Accordingly, the purchasers' claim was time barred. The *Zimbrano* Court explained:

> The general statutory right to rescind a condominium sale contract is controlled by section 718.503. *McGuiness v. Prospect Aragon, LLC*, 981 So. 2d 496, 498 (Fla. Dist. Ct. 2008). Section 718.503 requires certain language to be included in a contract that informs buyers of their rights to void the contract, including the statements that (i) the buyer may void the contract within 15 days of his/her signature and receipt by buyer of all the items required to be delivered under section 718.503 and (ii) the buyer's right to void the contract terminates at closing. Moreover, section 718.202 itself does not state when a purchaser's right to void provided therein expires.
>
> \*     \*     \*
>
> Because section 718.202 of the Florida Condominium Act itself does not state when the purchaser's right to void provided therein expires, the Court looks at the general right to void a sales contract provided in section 718.503 of that Act. The Court finds that plain reading of section 718.503 in conjunction with section 718.202 dictates that the Contract's failure to comply with section 718.202 provided the Plaintiffs fifteen days from the date of signature to void the Contract...."

Plaintiffs executed the Purchase Agreement on February 2, 2005. The Plaintiffs did not attempt to rescind the contract on the basis that Swire did not establish two (2) separate accounts pursuant to Fla. Stat. § 718.202 until February 2009, more than four years after Plaintiffs' executed the Purchase Agreement incorporating the Escrow Agreement by reference. Moreover, Plaintiffs were on notice that Lawyers Title held all monies in one account as early as August 8, 2008 (*see* Tab # 21), and acknowledged that the deposits were held in one account on October 1, 2008 (Tab # 10). However, Plaintiffs waited to rescind the Agreement based upon the alleged

violation for more than four (4) months. Again, Plaintiff's acquiesced or ratified the actions taken by Lawyers Title by waiting more than fifteen (15) days to void the Purchase Agreement.

> **F.    Waiver, Laches and Estoppel Bar Plaintiffs from Asserting That Defendants Violated 718.202, Fla.Stat.[11]**

Based upon the stipulated facts, as of May 2005, Plaintiffs had deposited with Defendants $232,000, which represented 20% of the purchase price for Unit 3202 at the Asia Condominium. Parties' Joint Pretrial Stipulation, Section 5, xxviii.   Lawyers Title, in accordance with the Escrow Agreement and Section 718.202, released and disbursed half of the deposited money to Swire for construction of the Condominium in April 2006.  *Id.* at xxix (Tab # 7).  Plaintiffs did not formally complain about the money being held in one account until February 2009.  Soon thereafter, they amended their complaint to assert a violation of 718.202.  Thus, based upon a combination of waiver, laches and estoppel, Lawyers Title asserts that Plaintiffs were unable to properly raise a violation of Section 718.202.

**WHEREFORE,** for all reasons set forth above, Defendant, Lawyers Title Insurance Corporation, respectfully requests that this Court:

A.    Vacate its Order entered on December 15, 2009 that partially granted Plaintiffs' Motion for Summary Judgment that Section 718.202, Fla.Stat. was violated by Defendants;

B.    Determine that Defendants did not violate Section 718.202, Fla.Stat., and

C.    Enter Judgment in favor of Defendant, Lawyers Title.

**II.    Counterclaim for Interpleader**

The elements for Interpleader are:

1.    A party is holding money for others; money that it is not entitled to keep;

---

[11] Finally, Lawyers Title incorporates all other arguments raised and asserted by Defendant, Swire, in its opposition to Plaintiffs' Motion for Summary Judgment.

19

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ◆ TEL: (954) 523-7008

2.      Other parties have made a claim for that money, which may expose the party holding the money to double or multiple liability; and

3.      The party holding the money did nothing to create the conflicting disputes for the money it is holding.

*See Campbell v. North American Co. for Life and Health Ins.*, ___ F.Supp2d ___ [2007 WL 2209249] (M.D. Fla. 2007); *SouthTrust Bank of Fla., N.A. v. Wilson*, 971 F.Supp. 539 (M.D. Fla. 1997).[12]      Moreover, the Escrow Agreement, incorporated by reference in the Purchase Agreement, states, in pertinent part: "In the event of a good faith disagreement about the interpretation of this Agreement, or about the rights and obligations, or the propriety, of any action contemplated by Escrow Agent hereunder, Escrow Agent may, at its sole discretion, file an action in Interpleader to resolve said disagreement." There should be no question that all three elements have been met in this case.

Lawyers Title is the escrow agent in the transaction to purchase a condominium by the Plaintiffs from the Defendant. That statement was stipulated to in the Parties' Joint Pretrial Stipulation, Section 5, vii. Moreover, both Plaintiffs and Swire have made a claim to the money being held by Lawyers Title. That statement is supported by the Parties' Joint Pretrial Stipulation, Section 5, xxxiii; October 1, 2008 letter from Plaintiffs' counsel to Lawyers Title (Tab # 10); and November 20, 2008 letter from Swire to Plaintiffs (Tab # 14).

There is no evidence that Lawyers Title created the conflict between Plaintiffs and Swire. In fact, the record better reflects that Lawyers Title had nothing to do with the conflict between the other parties. The competing claims do not arise from an alleged violation of Fla. Stat. § 718.202. This conclusion is evident from the allegations set forth in Plaintiffs initial Complaint

---

[12] "It is a generally accepted principle that a disinterested stakeholder filing an action in interpleader may be dismissed from the case, discharged from further liability, and, in the court's discretion awarded attorneys' fees and costs." *Kurland v. United States*, 919 F. Supp. 419, 421 (M.D. Fla. 1996); *citing Prudential Ins. Co. v. Boyd*, 781 F. 2d 1494 (11th Cir. 1986).

20

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ◆ TEL: (954) 523-7008

[DE 1] filed in December 2008. Furthermore, there is no evidence or testimony supporting Plaintiffs were damaged by Lawyers Title alleged failure to establish two (2) separate escrow accounts.

The conflict between Swire and Plaintiffs occurred for several reasons: 1) Double AA attempted to assign the Purchase Agreement to Daymi Rodriguez, which Swire argued, based upon the Purchase Agreement, that Double AA could not do so; 2) Double AA was unable to obtain financing in order to close on the purchase of the condominium; and 3) Plaintiffs did not close on the purchase of the condominium as scheduled - - in September 2008 - - letters were sent between the parties between September and November 2008, raising the above 3 issues. These statements are supported by the Parties' Joint Pretrial Stipulation, Section 5, xxxiii through xxxvii; October 1, 2008 letter from Plaintiffs' counsel to Lawyers Title (Tab # 10); and November 20, 2008 letter from Swire to Plaintiffs (Tab # 14).

Moreover, during depositions, neither Ms. Daymi Rodriguez nor her husband, Jose Rodriguez, on behalf of Double AA, testified to any damage caused to either of them by Lawyers Title. *See* Deposition of Daymi Rodriguez, taken September 18, 2009 (Tab 5) at pages 9-11 (The damages to her caused by Swire were that: (1) she "could not live in the apartment I wanted to live in", and (2) "they couldn't get the financing because then it took -- and it was delayed more than the time they said it would be ready by...."); page 53 ("My complaint is that I want my money back."); Deposition of Jose Rodriguez, taken on September 15, 2009 (Tab 4) at page 13-14, 17-18; 76-77 (Q:"How have you been damaged then?"  W: "In that I can't sell the apartment."). Finally, at page 80 of his deposition, Mr. Rodriguez stated: "You mean in what other way Swire could have harmed me?" He then answered: "No, I don't know."

Plaintiffs' most recent position is that Lawyers Title cannot interplead the monies in dispute because it wrongfully disbursed $116,000.00 to Swire for construction purposes and

21

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

refused to disburse monies to Plaintiffs despite their demands. Lawyers Title cannot be held liable for taking action consistent with the Escrow Agreement. *See, e.g., Marathon U.S. Realties, Inc. v. Kalb*, 260 S.E. 2d 85 (Ga.1979)(where escrow agreement expressly gave escrow agent an option to refuse to pay either the vendors or the purchaser prior to final judgment or settlement when conflicting claims or demands as to whom payment should be made were presented to him, escrow agent could not be held personally liable to vendors for breach of escrow agreement as a result of his refusal to pay funds to vendors upon their demand). Lawyers Title disbursed the second $116,000.00 to Swire for construction purposes soon after April 5, 2006, more than two (2) prior to receiving notice of the dispute between Plaintiffs and Swire. Lawyers Title cannot disburse the $116,000.00 currently in escrow without agreement of the parties or a final Court Order.

Finally, based upon Parties' Joint Pretrial Stipulation, Section 5, xxx and xl, Lawyers Title is holding $116,000 plus interest and will continue to hold that money until this dispute is resolved or this Court grants Lawyers Title's counterclaim for Interpleader. Consequently, the purpose of interpleader "is to protect a stakeholder from the possibility of defending multiple claims…., [which are to be] liberally construed to effectuate this purpose." *Campbell v. North Am. Co.*, 2007 WL 2209249 at 3 (Tab 15); *see also Kurland v. United States*, 919 F. Supp. at 422 ("The Supreme Court has stated that interpleader is a remedial device which is to be applied liberally."); *citing State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533, 87 S. Ct. 1199, 1204, 18 L. Ed. 2d 270 (1967).

**WHEREFORE**, Lawyers Title respectfully requests - - as it has from the beginning of this case, and consistently requested in both its motion to excuse it from mediation and motion to excuse it from Trial - - that this Court:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008

**CASE NO. 08-23444-CIV-ALTONAGA/BROWN**

     A.     Enter Judgment on the Counterclaim in Lawyers Title's favor and direct it to either:

          1.     Transfer the money it is holding in escrow into the registry of this Court;

or

          2.     Release and disburse the $116,000 plus interest to either Double AA/Daymi Rodriguez or Swire Pacific Holdings, Inc.; and

     B.     Reserve jurisdiction to determine whether Lawyers Title is entitled to recover its attorneys' fees for bringing the Interpleader Counterclaim.

**WHEREFORE**, Defendant Lawyers Title, respectfully requests this Court to enter Judgment in its favor on Count II of Plaintiffs' Amended Complaint against Lawyers Title as set forth earlier in this Memorandum, and against Plaintiffs and Swire on Lawyers Title's Counterclaim for Interpleader as set forth above, and grant such other relief as is just and proper under the law.

                        Respectfully Submitted,

                        QUINTAIROS, PRIETO, WOOD & BOYER, P.A
                        *Attorney for Defendant, Lawyers Title*
                        One East Broward Boulevard, Suite 1400
                        Fort Lauderdale, FL  33301
                        Telephone: (954) 523-7008
                        Facsimile:  (954) 523-7009

                        /s/ Asika Patel
                        Philip J. Kantor, Esq.
                        pkantor@qpwblaw.com
                        Florida Bar No. 435597
                        Asika Patel
                        apatel@qpwblaw.com
                        Florida Bar Number: 0581011

CASE NO. 08-23444-CIV-ALTONAGA/BROWN

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing is electronically filed with the Clerk of Court by using the CM/ECF system this 19th day of January 2010, which will send a notice of electronic filing to Alexander Lian, Esq., Alexander Lian, P.A., 777 Brickell Avenue, Suite 1210, Miami, Florida 33131 and Sandra J. Millor and Stephen James Binhak, Greenberg Traurig, PA, 1221 Brickell Avenue, Miami, Florida 33131.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
One East Broward Boulevard, Suite 1400
Fort Lauderdale, FL  33301
Telephone: (954) 523-7008
Facsimile:  (954) 523-7009

/s/     Asika Patel
Philip J. Kantor
pkantor@qpwblaw.com
Florida Bar Number 435597
Asika Patel
apatel@qpwblaw.com
Florida Bar Number: 0581011

24

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
ONE EAST BROWARD BOULEVARD, SUITE 1400, FORT LAUDERDALE, FLORIDA 33301 ♦ TEL: (954) 523-7008